Matter of the Estate of AUGUSTIN DALY, Deceased.

(Surrogates' Court, New York County, February, 1917.)

Executors and administrators — commissions of — accounting — attorneys — when compensation for legal services denied — Code Civ. Pro. § 2753.

Section 2753 of the Code of Civil Procedure, as amended in 1914, is retroactive in its operation and thereunder an executor-attorney may be awarded compensation · for legal services performed for the estate prior to September 1, 1914, when said section went into effect.

The estate of a deceased executor-attorney is entitled to receive a reasonable sum in compensation for legal services, severable and apart from executorial functions, rendered to the estate of his decedent prior to September 1, 1914, in so far as a claim therefor is not barred by decrees entered either on intermediate or private accountings.

The decree entered on the last intermediate accounting August 30, 1909, *inter alia,* fixed the basis of apportionment of commissions of the two executors and provided for the distribution, in stated proportions, to the different beneficaries, of the balance of the funds in their hands down to April 19, 1909, and that any moneys coming into the hands of the executors

from and after said date from the profits of continuing the decedent's business as well as any moneys derived from other sources coming to the executors should be paid and distributed by them, after deducting expenses of administration and executors' commissions to be computed and apportioned on the same basis as the commissions allowed by the decree, to the same persons and institutions and in the same proportions as set forth by said decree. The executors accounted to the beneficiaries, distributed the additional assets, paid the administration expenses, deducted commissions as directed by said decree, and took from the beneficiaries general releases, under seal, from all claims and demands by reason of every matter embraced in said accounts. *Held*, that the executors and their representatives were bound to abide by the consequences of their own acts acquiesced in by every one interested in the estate and evidenced by over eight complete settlements between the executors and all other parties.

That the executor-attorney was foreclosed from receiving additional compensation for legal services in connection with the acts embraced in the accounts and transactions between the parties from April 19, 1909, to December 31, 1913, and that an application by his legal representatives under section 2753 of the Code of Civil Procedure, for compensation for legal services rendered by him to the estate prior to the date when said section went into effect, will be denied but an allowance for legal services rendered after December 31, 1913, will be approved.

Motion to confirm report of Sidney Harris, referee.

Edward H. Daly, for executors.

Wetmore & Jenner, for certain objectors.

Washburn, Ruston & Koehler, for James C. Duff, as executor under the will of Mary D. Daly.

Francis J. Hogan, for St. Zita's Home for Friendless Children.

Misc.] Surrogate's Court, New York County, February, 1917.

John Whalen, for The Roman Catholic Orphan Asylum.

Oscar C. Kunze, for Guy Van Amringe, executor of Mrs. G. H. Gilbert.

COHALAN, S. Upon the exceptions filed to the referee's report arise questions of the construction and operation of section 2753 of the Code of Civil Procedure in regard to an allowance of compensation to an executor for legal services rendered by him to the estate, prior to the date when section 2753 of the Code of Civil Procedure, as amended in 1914, became effective.

The late Judge Joseph F. Daly acted as executor of this estate from 1899 until his death in 1916, subsequent to the hearings herein before the referee. It is claimed that as " an attorney and counselor-at-law of this state " he rendered valuable legal services to the estate during the entire period of his executorship down to the filing of this account on August 24, 1915, for which services compensation is sought under existing section 2753 of the Code of Civil Procedure, enacted in 1914.

It is conceded that Judge Daly exercised unusual ability in his management of the estate. Although it was practically insolvent in the beginning, it was made to produce, through his efforts, large sums of money for the benefit of the legatees. There seems to be no doubt that from the business standpoint of valuation the amount of ordinary executor's commissions which he received, or to which his estate may be entitled, cannot be said to be adequate remuneration for the very valuable and successful services he rendered to the estate. But such a consideration cannot be given any

Surrogate's Court, New York County, February, 1917. [Vol. 99.

weight where the compensation is fixed by statute. Whether Judge Daly's legal representatives should be paid the sums claimed for legal services must, of course, be determined by the principles of law that are applicable to the situation presented.

In view of the determination of this matter at which I have arrived, it will be unnecessary to examine the alleged legal services in detail for the purpose of considering and deciding whether *all* of the acts claimed as legal services were actually such within the purview of the statute, or were (as contended) so interwoven with purely executorial duties as to make it impossible to separate the work done by the executor in his executorial capacity from that performed by him in the capacity of attorney. There was shown sufficient work of a purely legal nature, severable and apart from executorial functions, to warrant consideration of his claim upon the following grounds, which, as will more fully appear, are the only ones I deem necessary to discuss:

*First.* Does section 2753 of the Code of Civil Procedure authorize the surrogate to award to an executor-attorney compensation for legal services performed prior to September 1, 1914, the date upon which said section, as amended, became effective?

*Second.* Do the accounting decrees of July 2, 1907, and August 30, 1909, bar the claim of Judge Daly for legal services performed in connection with acts set forth in the accounts judicially settled by those decrees?

*Third.* Do the private accountings of the executors to the beneficiaries from April 19, 1909, to December 31, 1913, and the payment of distributive shares and of executors' commissions and administrative expenses as set forth in said private accountings pursuant to the decree of August 30, 1909, which directed such

payments, conclude the executor-attorney from receiving in this judicial accounting additional compensation for legal services rendered to the estate during the periods embraced in said private accountings?

As to the first proposition regarding the general scope and effect of section 2753 of the Code of Civil Procedure, as amended:

By chapter 443, Laws of 1914, former section 2730 of the Code of Civil Procedure was amended and changed to existing section 2753 of the Code of Civil Procedure. By said amendment the surrogate was authorized to allow to an executor such compensation for legal services '' as shall appear to the surrogate to be just and reasonable,'' if the executor be '' an attorney and counselor-at-law of this state,'' where said executor '' shall have rendered legal services in connection with his official duties.'' Prior to this amendment it was well settled that an executor or administrator could not receive extra compensation for legal services rendered by him to the estate. *Collier* v. *Munn,* 41 N. Y. 143; *Matter of Wallach,* 164 App. Div. 600; affd., 215 N. Y. 622.

It is contended that said section 2753 of the Code of Civil Procedure, as amended in 1914 to permit an allowance for legal services to an executor-attorney, is retroactive in its operation and authorizes and empowers the surrogate to award compensation for such legal services, though they were performed prior to the time when the act took effect. This construction of the statute is opposed by the contesting legatees. The referee held that the amended Code section should be given a retroactive effect and operation.

While it is well settled that a law is generally presumed to apply only to cases arising subsequently to its enactment and that a law should never be given a

retroactive effect except where its express language so indicates, but should whenever reasonably possible be given a prospective operation (*New York & Oswego M. R. R. Co.* v. *Van Horn,* 57 N. Y. 473; *Jarvis* v. *Jarvis,* 3 Edw. Ch. 462, 487), and while the legislature is forbidden by the Federal Constitution from enacting any law that disturbs vested or property rights, yet it appears that the first statute of this state that awarded commissions to an executor was held to authorize an award of commissions for executorial services rendered prior to the enactment. *McWhorter* v. *Benson,* Hopk. Ch. 28; *Dakin* v. *Demming,* 6 Paige, 95, 101. The statute of 1892 increasing commissions was held to apply to trustees who had been in office administering the duties of their trust long before the enactment. *Naylor* v. *Gale,* 73 Hun, 53. These cases are the authorities cited in support of the referee's finding upon the theory that the principle that governs the application of a statute awarding compensation for usual executorial services should likewise control in applying a statute that authorizes an award of compensation for "extra services" of an executor. The attorney's services rendered by Judge Daly are classified "as extra services." *Collier* v. *Munn,* 41 N. Y. 145.

It is urged, however, that there is a difference between a statute either authorizing or increasing an allowance of commissions to an executor and the amendment under consideration, because, it is said, those statutes recognized a relationship that had theretofore existed between representatives and estates and merely permitted an award of compensation for the usual services performed during such continuing relationship, while the 1914 amendment in section 2753 of the Code of Civil Procedure is said to contemplate or intend the creation of an entirely new relationship of attorney and client between an executor in his two

capacities, that is, in his capacity as executor and in his capacity as attorney and counsel. But this contention seems to overlook the fact that prior to 1914 there was nothing in the law that prevented an executor who happened to be an attorney from acting as attorney for himself in the administration of an estate, though, of course, under the law, as it then existed, the executor was not entitled to compensation for such legal services. But the relationship, though without pecuniary reward therefor, *could* exist. The executor of this estate did, in fact, act as attorney and counselor for himself in his executorial capacity. There seems to be scarcely any essential difference in principle between this situation and one prior to the enactment of the statute of 1817, where an executor performed, personally, executorial functions, which were customarily attended to by agents employed by executors (*Collier* v. *Munn,* 41 N. Y. 146), because an executor could receive no compensation for such services when performed personally (*Manning* v. *Manning,* 1 Johns. Ch. 527), while he could receive reimbursement for payments to an agent employed to perform the same services. It seems, therefore, that the cases of *Dakin* v. *Demming* and *Naylor* v. *Gale, supra,* are authoritative upon the precise question under consideration.

The well settled rule, that the statute existing at the time of the passage of the accounts is the one which governs the allowance of compensation to an executor, is based upon the ground that an executor is not entitled to any compensation until the final execution of the duties imposed upon him. *Naylor* v. *Gale,* 73 Hun, 55. The executor acquires no accrued right to compensation until his accounts are being settled and his acts and conduct passed upon by the court, as it is only at that time that his services can be examined and his

14

compensation fixed. It would seem, therefore, that in applying the law in force at the time the right to compensation accrues, whether the compensation be for services purely executorial or of the nature of extra services, such as legal services, or, in other words, whether the compensation sought be for services that either may or may not be remunerated under the law in force when the services were performed, the rule of applying the statute in force at the time of the judicial accounting does not give said statute so much a retroactive effect, as it applies a new statute to an existing condition of things. In such a case the statute applied is the statute in force when the right to compensation has accrued. *Laird* v. *Carton,* 196 N. Y. 169.

On the first ground, therefore, I am of the opinion that the referee was right in holding that the estate of Judge Daly is entitled to receive a reasonable sum in compensation for legal services rendered prior to September 1, 1914, in so far as such claim is not barred by the accounting decrees of July 2, 1907, and August 30, 1909, and by the private accountings covering the period from April 19, 1909, to December 31, 1913.

The second question involves the effect of the judicial decrees of 1907 and 1909. The referee held that the decrees of 1907 and 1909, judicially settling the accounts of the executors, were a bar to any claim for compensation for legal services in connection with any of the acts of the executors included in the accounts settled by these decrees. The cases cited by the referee show that he is correct in this decision. *Matter of Tilden,* 44 Hun, 441, 445; *Matter of Prentice,* 25 App. Div. 210.

The third question goes to the effect upon the executors' claim of the transactions between all the parties in connection with the private accountings, rendered subsequently to the accounting decree of 1909.

The decree of August 30, 1909, among other things, contained a provision in paragraph 3 thereof, fixing the basis of apportionment of commissions between the two executors. The 6th paragraph of the decree provided for the distribution of the balance of funds in the hands of the executors down to April 19, 1909, to the different beneficiaries, in stated proportions. Because further assets were expected to come into the hands of the executors, the decree provided as follows:

" *Seventh.* Any moneys coming to the hands of the executors from and after the date of the supplemental account, April 19, 1909, from the profits of continuing the business of Daly's Theatre, London, and the licensing of plays or from the proceeds of sales of any of said property, as well as any moneys derived from other sources, coming to them as such executors, shall be paid and distributed by them (after deducting expenses of administration and their commissions as executors to be computed and apportioned on the same basis as the commissions allowed by this decree), to the same persons and institutions and in the same proportions as set forth in the Sixth paragraph of this decree."

Thereafter, and in compliance with the terms of said paragraph 7 of the decree, the executors distributed to the beneficiaries the money coming into their hands, rendered to them accounts therefor, showing payment of administration expenses and reservation of executors' commissions and took from the beneficiaries general releases under seal in the following form:

" Received from Joseph F. Daly and Richard Dorney, surviving executors of the last will and testament of Augustin Daly, deceased, the sum of
         dollars, in full of the share of the under-

signed in the distribution of the balance shown on within account under the final decree of August 30, 1909, and the said executors, and each of them, are hereby released from all claims and demands by reason of every matter embraced in said account.

Signed and sealed this     day of     19 ."

Such accountings, including the taking of releases, payment of expenses and deduction of commissions, covered a period extending from April 19, 1909, to December 31, 1913. At the time of the payment of expenses of administration and deduction of·commissions upon the payments stated in the private accountings, no claim was made by Judge Daly for legal services performed by him for the estate. Under the law as it existed then, Judge Daly was not entitled to any compensation for extra services as attorney. It is contended on behalf of his estate that the semi-annual payments of expenses and distributive shares and deductions of commissions thereon are not a bar to an award in this accounting of extra compensation for legal services performed by the executor-attorney during the period embraced in the private accountings, of which the semi-annual payments were part. The referee held that said semi-annual statements and accountings were not a bar to such an allowance in this proceeding, and awarded the executor-attorney the sum of $4,350 for legal services performed during the period extending from April 19, 1909, to December 31, 1913.

The referee held that the rendering of the semi-annual accounts, accompanied by the deduction of commissions and administration expenses, as directed by the decree of August 30, 1909, and the taking of releases from the beneficiaries, were not a bar to an allowance, in this proceeding, to the executors for legal

services performed during the periods embraced in said private accountings. The referee so held upon the authority of *Naylor* v. *Gale,* 73 Hun 53, upon the theory, that the executor, so far as the semi-annual accounts are concerned, is in the same position as a trustee, who pays income and deducts commissions thereon, on a system of annual rests. The referee stated in his opinion that reservations of commissions " by executors as well as trustees are not conclusive on the parties thereto until the decree of the surrogate's court is made passing and approving them."

If there is an analogy between the acts of these executors, reserving commissions on income paid to the beneficiaries, and that of a trustee, paying income and reserving to himself commissions thereon, it would seem to follow (were such a question to arise) that the executors would be deemed to have waived any right to further commissions upon the income already disbursed and accounted for. *Cook* v. *Stockwell,* 206 N. Y. 481; *Spencer* v. *Spencer,* 38 App. Div. 403. If the executors would be deemed to have waived the right to further commissions, they must be deemed to have also forfeited any right to demand or receive any extra compensation for legal services, for the only authority for allowing herein compensation for legal services rendered in connection with past transactions, in which the money has been disbursed and accounts rendered to the parties, is the analogy such an allowance bears to the award of commissions, and because the cases hold that a new law may be applied to past services so as to allow, by commissions, compensation or increased compensation for such past services.

The cases cited by the referee are, in my opinion, inapplicable to the facts of this case. I think there is a decided difference between the case of *Naylor* v. *Gale,*

*supra,* and the facts herein as regards this question. In *Naylor* v. *Gale,* the trustees, upon their own responsibility, had deducted their commissions upon income disbursed. This, trustees may legally do. *Matter of Mason,* 98 N. Y. 527. Executors, however, have no power or right to deduct their commissions in advance of their allowance by the court (*Wheelwright* v. *Rhoades,* 28 Hun, 57), and if an executor does so it may be good ground for his removal. *Matter of Havemeyer,* 3 App. Div. 524. The deductions of commissions by the executors as set forth in the private accountings and shown by the executors' receipts were lawful, because such reservations of commissions were sanctioned and allowed by decree of the court. The decree of August 30, 1909, expressly provided that moneys coming into the hands of the executors subsequently to April 19, 1909, were to be " paid and distributed by them (after deducting expenses of administration and their commissions as executors to be computed and apportioned on the same basis as the commissions allowed by this decree) to the same persons and institutions and in the same proportions as set forth in the Sixth paragraph of this decree.''

This provision of the decree was a judicial allowance of commissions to the executors with an express instruction as to their manner of computation and apportionment. The computation, apportionment and deduction of the commissions were in compliance with the terms of the said decree. Upon the doing of the acts directed by the decree, the executors were discharged as to said acts. The directions in the decree regarding the computation and deduction of commissions could not be changed or varied except by opening the decree, which could be done only on the statutory grounds. As already shown, the subsequent

Misc.] Surrogate's Court, New York County, February, 1917.

change in the law regarding compensation for legal services is not sufficient to warrant the opening of a decree.

The case of *Naylor* v. *Gale, supra,* is not authoritative herein for the further reason that no question arose in that case as to the effect of general releases. In the matter now before the court, the executors accounted to the beneficiaries, distributed the additional assets, paid the administration expenses, deducted commissions, as directed by the decree of August 30, 1909, and took from the beneficiaries general releases, under seal, releasing the executors from all claims and demands by reason of every matter embraced in said accounts. Apart from the fact that compliance with the decree discharged the executors from any liability as to all matters embraced therein, the effect of a private accounting and releases, as between executors and the persons interested in the estate, is to make said accounting conclusive as between the executors and the parties who have duly released them in such private settlement. An executor cannot be required to account to the court as a matter of right at the instance of a person who has duly released the executor in a settlement made out of court. Such person has not the right to set the machinery of the Surrogate's Court in motion, in the face of a duly executed release and evidence of a complete settlement between the executor and all persons interested, where the release and the settlement are not attacked for fraud or the like. *Matter of Wagner,* 119, N. Y. 28. If the beneficiaries are prevented from questioning the transactions involved in a settlement, an executor should likewise be bound by it. In the absence of fraud, clerical error or like cause, I believe these executors and their representatives are bound to abide

by the consequences of their own acts, acquiesced in by every one interested in the estate and evidenced by over eight complete settlements between the executors and all other parties. A statute subsequently enacted authorizing an award to an executor for '' extra services '' does not constitute sufficient cause to open such accounts.

It is true that the present judicial accounting includes acts already embraced in the private settlements between the representatives and the parties subsequent to April, 1909, and there is no objection to that form of the account. But it is also true that none of the beneficiaries would have any standing to object to any of those transactions in the face of their releases apparently duly executed and not questioned or assailed. The court can only approve, *pro forma*, what has already been completely settled out of court. The acts included in the private settlement may have the sanction and confirmation of a judicial decree in this proceeding; but such acts were already passed and approved in advance by the decree which directed their performance. Such judicial approval included the reservation of future commissions and payment of future administration expenses, which acts were expressly directed by the decree of August 30, 1909. This decree merely went further than the usual decree that directs payments to be made. In such a case the accounting representative does the acts directed, takes vouchers for the payments made, and is thereby discharged. It would not be seriously contended that payments so made were distinct from the judicial accounting and decree in which they were actually directed. So, here, there seems to be no escape from the conclusion that when the right of the executors to commissions or compensation accrued between April

19, 1909, and December 31, 1913, there was in force a judicial decree allowing such payments when made, and that the payments to the executors for services, like the payments to the beneficiaries on account of additional assets received, all related back to the decree of August 30, 1909, pursuant to which said acts were performed. The doing of these acts directed by the decree have the same effect, so far as barring the claim is concerned, as the acts specifically stated in the accounts filed in the proceeding, in which the decree was signed. The private accountings and releases are an additional bar.

I am of the opinion, therefore, that the executor-attorney is foreclosed from receiving any additional compensation for legal services in connection with the acts embraced in the accounts and transactions between the parties from April 19, 1909, to December 31, 1913.

These conclusions leave open for allowance the legal services rendered during the period from December 31, 1913, to the present accounting only. The finding of the referee that the reasonable value of such services is $175 is approved. This disposition renders unnecessary the finding of fact of the referee's report numbered XIV (1), and requires a modification of finding of law No. 6 to accord with this opinion. In all other respects the report of the referee is confirmed and exceptions will be disposed of accordingly.

Decreed accordingly.