[S. F. No. 16028. In Bank.—November 12, 1940.]

In the Matter of the Estate of MABEL B. GUMP, Deceased. BERTHA L. COHEN, Appellant, v. ABRAHAM L. GUMP et al., as Executors, etc., Respondents.

Treadwell & Laughlin and Russell E. Barnes for Appellant.

Charles A. Christin and Rowland R. King for Respondents.

Heller, Ehrman, White & McAuliffe and Lawrence C. Baker, as *Amici Curiae,* on Behalf of Respondents.

CURTIS, J.—This is an appeal from an order settling the first and final account of the executors of the estate of Mabel B. Gump, deceased, and ordering final distribution in the matter of said estate.

The main objection of appellant to said order is the alleged failure of the trial court to compel the executors to inventory certain real property, the subject of an *inter vivos* trust, as an asset of the estate, upon the theory that said trust was void as violating the rule against perpetuities and the statutory rule against restraints of alienation. A further objection was made that the executors should have been charged with secret profits which had been made and which might be made by them as shareholders and officers of S. & G. Gump Company on the resale of personal property purchased from the estate.

The appellant, Bertha L. Cohen, as a life-long friend of testatrix, was named a legatee in the sum of $5,000 in the will of Mabel B. Gump, deceased. In said will, the testatrix after leaving certain legacies to friends, relatives and charities, devised and bequeathed the residue to her three children, Marcella Gump, Robert Livingston Gump and Richard Benjamin Gump, and nominated Abraham L. Gump, Robert Livingston Gump and Richard Benjamin Gump as executors of her last will and testament.

Subsequent to the date of her will, on the 14th day of February, 1928, Mabel B. Gump conveyed her interest in certain real property to the Wells Fargo Bank & Union Trust Company by deed. On the same date an agreement was entered into between Mabel B. Gump, as trustor, and Wells Fargo Bank & Union Trust Company, as trustee, setting forth the terms upon which the Wells Fargo Bank & Union Trust Company was to hold the property.

Mabel B. Gump died on December 3, 1934, and proper steps were taken by her executors to administer her estate. The executors did not include in the inventory filed by them, the property included and described in the trust agreement executed by the testatrix on February 14, 1928. During the course of the administration of her estate, after petition duly filed and notice of hearing given appellant, the personal property of the testatrix, consisting mainly of rare and beautiful objects of art, was sold at public auction. No objection to the petition or return of sale was made. Thereafter the first and final account of the executors was filed. Prior to the filing of any objections to said account, the executors sought and secured confirmation of the sale of the personal property of testatrix at public auction. No appeal was taken from this order. When it appeared that the assets of the estate would be insufficient to permit payment of the $5,000 legacy to said Bertha L. Cohen unless said assets could be augmented by having the trust property returned as part of the estate, Bertha L. Cohen filed her objections and exceptions to said final order settling the estate and sought to have the trust declared null and void.

She also sought to compel the executors to account for profits made by S. & G. Gump Company in which corporation the executors were beneficially interested as shareholders and officers, upon a resale of certain of the personal property of the testatrix bought by said corporation at the public auction.

The probate court sustained the trust, overruled the objections with reference to the sale at public auction of the personal property of the testatrix, and made its order settling the account and decreeing distribution of the estate. It is from this order that the appeal is here taken.

In order that there may not be any possible misstatement of the provisions of said trust instrument, we shall set it forth in full. It is as follows:

"This agreement, made and entered into this 14th day of February, 1928, by and between Mabel L. Gump, of the City and County of San Francisco, State of California, party of the first part, and Wells Fargo Bank & Union Trust Co., a corporation, party of the second part; Witnesseth:

"Whereas, the party of the first part has by deed of grant, bargain and sale bearing even date herewith, sold and con-

veyed unto the said party of the second part, its successors and assigns, all of the following real property situate, lying and being in the City and County of San Francisco, State of California, and particularly described as follows, to-wit:

(Description of property.)

"Now, therefore, it is understood and agreed by said parties hereto that said conveyance was made, executed and delivered by said party of the first part to said party of the second part for the following uses and purposes, and subject to the following conditions:

"(1) To hold the same for the term of twenty years from the date hereof, as security for the payment to said party of the second part of the sum of seventy-five thousand dollars ($75,000.00), with interest thereon at the rate of six per cent per annum, until paid; and as security for the payment to said party of the second part for all taxes, assessments, liens and encumbrances, repairs, improvements, and insurance premiums which may, during the term of this agreement, be laid or imposed upon the said premises; and, if, during the term of this agreement, the said party of the second part shall deem it necessary or proper to pay any other expenses or moneys in connection with said property herein conveyed, or under this agreement, the amounts so expended by said party of the second part shall be deemed to be a debt due from said party of the first part to said party of the second part, and be secured with interest thereon at the rate of six per cent per annum from the date of such expenditure, until paid, by the property hereinabove described.

"(2) To manage and lease said properties, and to ask, demand, sue for, recover, and receive, any and all sums of money arising, or which may arise from the said properties hereinabove described, from rents, income, or otherwise, during the term of this agreement; and to pay, or cause to be paid, from the rents and income arising, or which may arise from the said properties, all taxes, assessments, liens or encumbrances which may be laid or imposed upon the said properties, and all repairs, improvements and insurance premiums in and upon the said properties, and all expenses incurred by the said party of the second part in connection with this trust, including all reasonable fees and charges which may be paid or incurred for advice given or for legal ser-

vices rendered to said party of the second part in connection therewith, and for all compensation to which the said party of the second part may be entitled for services in connection with this trust; and said party of the second part is hereby given full power and authority, without notice to the party of the first part, to incur any indebtedness which it may deem necessary or proper for the protection of the said properties hereinabove described, and to carry out the intent, purposes and terms of this agreement.

"(3) To repay to the said party of the second part the said sum of $75,000.00, and interest thereon at the rate of six per cent per annum until paid, and all other sums of money which may be expended, or debts incurred, in the manner following: The sum of seven hundred and fifty dollars ($750.00) per month, commencing with the 15th day of March, 1928, and continuing thereafter until the entire amount of $75,000.00, and such other amounts as shall have been advanced by said party of the second part to said party of the first part, or for her use and benefit, in connection with this trust, together with interest thereon, shall have been fully paid; the said payments to be made out of the rentals and income arising, or which may arise, from the properties hereinbefore described; and, after deducting from said rentals and income the said monthly payment to said party of the second part, as set forth herein, and of any and all expenditures made by said party of the second part in connection with the said properties and in connection with this agreement, as set forth in paragraph 2 hereof, the said party of the second part shall, each month, pay over to said party of the first part the remainder of the said rentals and income.

"(4) If all of said indebtedness of $75,000.00 and all moneys advanced or which may be advanced by said party of the second part for the purposes of this agreement, and interest thereon, and all moneys due to said party of the second part, and all sums hereby secured, shall be well and truly paid by said party of the first part, and all covenants and obligations by her to be kept and discharged shall be duly observed during the term of this agreement, and then, at the expiration of the term of this agreement the said party of the second part shall make, execute and deliver, by proper deed or deeds of conveyance, all of the property hereinabove described and conveyed by said party of the

first part to said party of the second part on this date, to the following named persons, to wit: Marcella Gump, Robert Livingston Gump and Richard Benjamin Gump, the children of said party of the first part; reserving, however, to said party of the first part herein a life estate in said properties, together with the entire net rents and income arising therefrom.

"In the event, however, that at the expiration of the term of this agreement all of the said sums of money herein specified and referred to, and interest thereon, shall not have been fully paid by said party of the first part to said party of the second part, and all covenants and obligations by her to be kept and discharged shall not have been fully observed by her, then and in that event this trust shall continue and the title to said properties hereinabove described shall remain in said party of the second part, until all sums of money which may then be due and owing to said party of the second part by said party of the first part shall be fully paid, and all covenants and obligations upon her part to be discharged hereunder shall be fully observed, and the said properties shall then be conveyed to the said parties hereinabove named, to wit: Marcella Gump, Robert Livingston Gump and Richard Benjamin Gump.

"If, however, before the expiration of the term of this agreement, all of the said sums of money herein specified and referred to, and interest thereon, shall be fully paid by said party of the first part to said party of the second part, and all covenants and obligations upon her part hereunder shall be fully kept and observed, then the said party of the second part shall pay over to said party of the first part each month during the remaining term of this agreement, the entire rentals and income arising from the said properties hereinabove described, after deducting from said rentals and income the amount of any expenditures which may be necessary and proper to make in connection with this trust, and all necessary expenses in connection with the said properties, as set forth and referred to in paragraph 2 of this agreement, and for the protection and care of the said properties.

"(5) In the event of the death of said party of the first part during the term of this agreement, then the said party of the second part shall convey the said properties conveyed to it by said party of the first part, to the following named

persons, to wit: Marcella Gump, Robert Livingston Gump and Richard Benjamin Gump; upon the condition, however, that simultaneously with the making, execution and delivery by said party of the second part of said deed or deeds of conveyance to said Marcella Gump, Robert Livingston Gump and Richard Benjamin Gump, the said Marcella Gump, Robert Livingston Gump and Richard Benjamin Gump shall make, execute and deliver to said party of the second part herein a promissory note, secured by a deed of trust covering the said properties hereinabove described, which said deed of trust shall constitute a first lien on said properties, to secure the payment to said party of the second part of any and all sums of money or indebtedness which may then be due to said party of the second part hereunder; said note and deed of trust to contain such terms and provisions as may be suggested by said party of the second part.

"In the event that the said party of the first part shall die prior to twenty years from the date hereof, and shall be predeceased by either Marcella Gump, Robert Livingston Gump or Richard Benjamin Gump, or, in the event that either of said last named persons shall fail from any cause to make, execute and deliver to the party of the second part, upon the death of the said party of the first part, such note and deed of trust, then said party of the second part shall, at the death of the party of the first part, continue to hold title to said properties hereinabove described, and shall make conveyance thereof only if and when said indebtedness shall be fully paid, to such of the aforesaid three children of the party of the first part as shall then be alive, and to the issue *per stirpes* of any of said three children who may then be dead, or failing such issue, to the survivors or survivor of said children.

"In the event that one or more of the said children of said party of the first part shall predecease said party of the first part, or die before the expiration of the term of this agreement, and leave issue him or her surviving, then and in that event such issue of such deceased child or children shall be named as a grantee or grantees in said deeds of conveyance of said properties by said party of the second part herein, in the place and stead of such child or children. In the event, however, that one or more of the said children of said party of the first part shall predecease the said party of the first part, or shall die before the expiration of the

term of this agreement, and leave no issue him or her surviving, then and in that event such child or children of the party of the first part herein as shall survive said party of the first part, or shall be living at the expiration of the term of this agreement, shall be named as the grantee or grantees in the said deed or deeds of conveyance of said properties by said party of the second part.

"(6) Said party of the second part shall have the right to sell and dispose of the said properties conveyed to it by said party of the first part, at public auction, or at private sale, and on such terms and conditions as to the said party of the second part may seem meet and proper. In the event of such sale the party of the second part shall apply such portion of the proceeds thereof as may be necessary to pay all indebtedness due and owing to the said party of the second part by said party of the first part hereunder, at the time of such sale, together with interest thereon, and all costs of sale and expenses connected therewith which may be required to be paid by said party of the second part; and the party of the second part may invest and reinvest the balance of the proceeds of such sale in such manner as in its judgment, may be for the best interests of the party of the first part herein, and to pay over to said party of the first part the entire rentals or income which may arise from such investment after deducting therefrom all necessary and proper expenses connected therewith and with this trust; and further carrying out all of the other terms and conditions of this trust herein contained.

"(7) In the event of the death of the party of the first part prior to the expiration of the term of this agreement, and in the event that at the time of the death of said party of the first part all of the said sums of money herein specified and referred to, and interest thereon, shall be fully paid, and all covenants and obligations upon the part of said party of the first part hereunder shall be fully kept and observed, then the said party of the second part shall, during the remainder of the term of this agreement, pay over the entire net rentals and income arising from the said properties hereinabove described, to the said children of the party of the first part who shall survive her and to the issue *per stirpes* of any deceased child or children, or if there be no such issue, then to the survivor or survivors of said children of said party of the first part.

"(8) The party of the first part hereby constitutes the party of the second part her true and lawful attorney, irrevocable, authorizing said party of the second part, in the name of the party of the first part, or otherwise, as the case may require, to do any and all acts and things which may be necessary and proper to carry into effect the proper intent and meaning of these presents."

We shall briefly analyze the trust agreement as there are certain features of the agreement to which attention should be specifically directed. It is at once apparent that the trust deed has a dual or double aspect in that it has mortgage, deed of trust, or security attributes, included to protect the rights of the creditor-trustee, and it also has provisions which create, or attempt to create an *inter vivos* or living trust. It is also apparent from the face of the instrument that the primary object of said trust agreement was the security of the Wells Fargo Bank & Union Trust Company, and of next importance was a final distribution to the trustor for life and upon her death to her three children. Provision is naturally made therein that if any of her children shall be deceased prior to the termination of the trust, the issue of said child shall take the share of said deceased child, or if there be no issue of said deceased child, then said property shall go to the survivor or survivors of the three children of the trustor. There is nothing in the trust agreement to indicate that the trustor was particularly interested in the grandchildren as such, or interested in their receiving any part of the estate, other than in carrying out logically her scheme of distribution whereby her three children would share equally, share and share alike. Clearly of secondary importance are these provisions for the issue of any deceased child. A definite term of twenty years is specified as the duration of the trust and most of the provisions are phrased upon the assumption that the trust will continue only for the definite period of twenty years, or terminate sooner in the event of the death of the trustor prior to that time. A definite provision is also included whereby in the normal course of events the entire sum of $75,000 will be repaid with interest at the rate of $750 per month before the expiration of the definite period of twenty years. In this regard it should perhaps be pointed out that the expenses incidental to the management of the property and the trust are to be paid out of the monthly income and rentals in addition to the

regular $750 per month payment. To fully protect the security of the bank, the creditor-trustee is given full management and control of the real property described therein; is given the privilege of retaining title thereto until the indebtedness has been paid in full; and is further vested with the absolute and unlimited power of sale.

Three contingencies are specifically provided for: (1) If the trustor is living at the end of the twenty-year period, and at the termination of said period the indebtedness shall be fully paid, the trustee is to convey the property to the three named children of the trustor, reserving a life estate to the trustor; (2) if the trustor die during the duration of the twenty-year period, the trustee is to convey the property to the three children upon their simultaneously executing a promissory note and trust deed to the bank for the balance due; and (3) if the bank, in the exercise of its privilege and power of sale, shall sell the trust property then after paying the amount of indebtedness due, together with the expenses of sale, etc., the trustee shall invest and reinvest *the balance* of the proceeds, and pay the income therefrom to the trustor until the expiration of the twenty-year period.

It may be noted that the second contingency provided for has in fact occurred. The death of the trustor taking place on December 3, 1934, prior to the termination of the twenty-year period, the trustee and beneficiaries named therein, being the three children of the trustor, in April, 1935, carried out the terms of said trust agreement by a conveyance of the trust property by the bank to the beneficiaries, and the simultaneous execution by them of a promissory note and trust deed as security for the $33,000 balance of indebtedness due at that time.

■ The sole provision which endangers the whole trust scheme is the security provision contained in paragraph 4 of said instrument stating that the trustee may hold title, even after the expiration of twenty years, until the indebtedness be fully repaid. As a security protection, such provision under the doctrine of *Sacramento Bank* v. *Alcorn,* 121 Cal. 379 [53 Pac. 813], is not contrary to the rule against perpetuities and the rule against restraints on alienation. However, it is argued that this same provision when considered in reference to the *inter vivos* trust aspect of the trust agreement violates both the constitutional prohibition against perpetuities (art. XX, sec. 9, California Constitution) and

the statutory prohibition on restraints on alienation. (Secs. 715 and 716, Civ. Code.) It is with this phase only that we are here concerned.

As before noted, the provision of the trust against which the attack is launched and which it is claimed invalidates the entire trust, is that one which contemplates a possible continuance of the trust for an indefinite period beyond the twenty-year term because of a failure to clear the property of debt. Theoretically, the trustee might under its plenary power of management continue to encumber the property —perhaps to such an extent that the children of the trustor, or their issue, would never be willing to meet the condition of executing a promissory note and trust deed to secure payment of any remaining balance of the debt upon conveyance to them of the real property by the trustee. Practically, such a situation is most improbable. In the first place, the power of the trustee to make repairs and improvements does not vest in such trustee the power to make extravagant expenditures. The suggestion that the trustee might "improve" the property by the construction of a twenty-story building at a cost of five to ten million dollars is patently unreasonable. At the time the trust was created, section 857 of the Civil Code limited trusts in real property to trusts for certain purposes and a trust to "improve" property and expend any money which the trustee deemed proper in connection with the property was in no way authorized by law. And if the power "to improve" be claimed to be more than the power of reasonable and careful management by the trustee, such purpose was not a lawful trust purpose and such provision was void from its inception. (*Estate of Fair,* 132 Cal. 523 [60 Pac. 442, 64 Pac. 1000, 84 Am. St. Rep. 70].) It is to be noted, as before pointed out, that paragraph 3 of the trust instrument which provides for the repayment of the principal and interest of the debt at the rate of $750 per month or $9,000 each year, also provides that the payments for the other expenses of management and upkeep are to be paid monthly from the income and rentals of the trust property and it is only after the payment and deduction from the total income of such expenses and the $750 per month that the remainder of the income is to be paid over to the trustor. It is mathematically demonstrable that if these incidental expenses are paid each month from the income and $750 per month is paid on the principal and interest

the entire amount will be paid within twelve years. The fact that $42,000 of the principle debt had already been paid off between the date of the execution of the trust agreement, February 14, 1928, and the date, April, 1935, when the three children of the trustor joined in executing a promissory note and trust deed for the balance then due of $33,000, a period of a little more than seven years, clearly demonstrates the improbability of the contingency suggested by the appellant actually materializing.

However, we have in mind the fact that in testing a trust agreement for violation of the rule against perpetuities or restraints on alienation, its validity is to be judged as of the date of its inception. (*Estate of Troy,* 214 Cal. 53 [3 Pac. (2d) 930].) That is to say, it is not permitted to wait to see what happens in order to determine the validity or invalidity of the trust. We shall, therefore, concede the possibility of the situation suggested by appellant arising— despite the fact that the trust agreement has already been fully executed and terminated by the conveyance of the trust property therein described by the trustee to the three children of the trustor, and the simultaneous execution by them of a promissory note and trust deed for the balance due—and shall proceed, upon the premise that this particular provision would be repugnant to the constitutional and statutory prohibitions against perpetuities and restraints on alienation, to a discussion of the question of whether the inclusion of such invalid provision in the trust instrument necessarily invalidates the entire trust agreement.

The inclusion of such provision does not invalidate the trust agreement for the reason that the valid portions of the trust with reference to the vesting of the estate in certain beneficiaries can be severed from the invalid provisions and allowed to stand in order to effectuate the trustor's intent, irrespective of any invalid provision.

The rule that illegal portions of a trust will be severed from otherwise valid portions of the trust when to do so will be in accordance with the trustor's intent is well settled in California. In this regard, it is the general rule that trust provisions for a valid term are separable from those for an invalid period where the trust instrument shows the trustor would have preferred separation to total invalidation, or where the invalid provisions only incidentally affect the main scheme. The cases of *Nellis* v. *Rickard,* 133 Cal. 617 [66

548

Pac. 32, 85 Am. St. Rep. 227] ; *Estate of Pichoir,* 139 Cal.
682 [73 Pac. 606] ; *Sacramento Bank* v. *Montgomery,* 146
Cal. 745 [81 Pac. 138] ; *Estate of Van Wyck,* 185 Cal. 49
[196 Pac. 50], and *Estate of Troy, supra,* are all authority
for this salutary rule.   (See, also, *In re Wanamaker's Estate,*
335 Pa. 241 [6 Atl. (2d) 852], and *In re Lilley's Estate,* 272
Pa. 143 [116 Atl. 392, 28 A. L. R. 375] and *Millikin Nat.
Bank* v. *Wilson,* 343 Ill. 55 [174 N. E. 857, 75 A. L. R. 124].)
It has also been held that in determining whether a case is a
proper one for the application of the rule which permits
a severance of invalid trust provisions in order to sustain
those which are valid, it is not only permissible but proper
to examine and evaluate actual occurrences.   (*Estate of Troy,
supra.*) ▆▆ This being so, we are convinced that the in-
stant case clearly belongs in the category of cases where that
which is valid in the trust may be separated from that which
is invalid, for we are satisfied that the main scheme of the
trustor for the distribution of the trust property is com-
pletely achieved and realized by the elimination of the in-
valid provision.   That the estate of the trustor's three chil-
dren may be readily separated from the possible estate to
any grandchildren is completely demonstrated by the fact
that it has already been accomplished.   There can be no
stronger proof.   In construing trust instruments, as in the
construction and interpretation of all documents, the duty
of the court is to first ascertain and then, if possible, give
effect to the intent of the maker.   Would it not be sacrificing
the substance to the mere letter of the law to hold that there
can be no possible severance of estates because such sever-
ance would be contrary to the scheme of distribution in
the mind of the trustor at the time of the execution of the
trust instrument, after the intent of the trustor has, in fact,
been completely accomplished by the conveyance of the trust
property to the three children by the trustee upon the exe-
cution by them of a promissory note and trust deed for
the balance due upon the indebtedness, in strict accordance
with the exact provisions of the trust agreement? Such a
severance is not only possible, but if the intent of the trustor
is to be effected, it is imperative.   To refuse to make such
severance results in a nullification of the entire trust instru-
ment in so far as its *inter vivos* trust provisions are con-
cerned and thereby utterly defeats the trustor's plan of distri-
bution of her estate as clearly expressed in said instrument.

Doubtless it was the intention and hope of the testatrix at the time of the execution of her will that the specific legacies therein provided for should be paid to the named legatees, but this intention was necessarily modified when she subsequently executed the trust instrument containing the provisions making the specific disposition of the trust property therein described. Her intention thereafter must have been that such legacies should be paid out of her estate only if there were sufficient assets in her estate after the withdrawing of said trust property from the total amount of her assets.

We are satisfied that the trust agreement herein was not invalid, and that the finding of the probate court to the effect that the executors have not failed to include in their inventory property belonging to the estate of the decedent is correct.

We are likewise satisfied that the question of the validity of the sale of the personal property of the testatrix at public auction, after petition by the executors for its sale, proper notice given, and the confirmation of the sale by the probate court, cannot be reopened on the hearing of objections to the final account. The order for confirmation of sale is an appealable order. (Sec. 1240, Probate Code.) The objection that the executors bought property of the estate, either personally or in behalf of S. & G. Gump Company, of which corporation they were officers and in which they owned shares, should have properly been presented at the hearing upon the petition for a confirmation of the sale. No appeal having been taken from said order of confirmation, the probate court was not at liberty to reexamine the question upon the hearing of the final account.

The order of the probate court settling the first and final account of the executors and decreeing distribution of the said estate is hereby affirmed.

Shenk, J., Edmonds, J., Carter, J., Gibson, C. J., York, J., *pro tem.*, and Moore, J., *pro tem.*, concurred.

Rehearing denied. Carter, J., and Traynor, J., voted for a rehearing.