[L. A. No. 24046.   In Bank.   Nov. 2, 1956.]

Estate of ANNA M. JOHNSTON, Deceased.   ALFRED R. JOHNSTON, as Executor, etc., Appellant.

Leland J. Allen for Appellant.

No appearance for Respondents.

McCOMB, J.—This is an appeal from an order settling the first account current, decreeing preliminary distribution, fixing statutory and extraordinary fees of the executor and the attorney, and interpreting the will of Anna M. Johnston.

## CHRONOLOGY

i.  Testatrix died July 14, 1953, leaving a will.

ii.  The provisions of her will, insofar as they are pertinent to this appeal, are as follows:

"SEVENTH: I direct that my farm at Hopkinton, Iowa be sold, if this has not been done before my decease, and the proceeds added to the value of my estate. All other assets to be held and administered by the Executor of my estate, until they liquidate themselves.

"EIGHTH: After the payment of the above set out cash bequests, I hereby direct that the Reformed Presbyterian Church Board of Foreign Missions of North America whose address is 209 Ninth Street, Pittsburgh, Pa., is to receive an undivided one-fourth interest of my entire estate, personal and real wherever situated, including the cash balance on hand after the payment of just debts, cash bequests and taxes. In case this Board ceases to exist, then in that event the remainder of such interest is to pass to the Presbyterian Church Board of Foreign Missions of U.S.A., whose address is 156 Fifth Avenue, New York City, N. Y.

"NINTH: The remainder of my estate shall be distributed as follows:

" (a)  One-third to my sister Mary Ensign's three children, namely—Evelyn Leininger, Russell Ensign and Elizabeth Groot, share and share alike. In case any one of the above named children of my sister Mary Ensign shall predecease me or before the final distribution of my estate, then in that event their respective share or shares shall be paid to their lawful issue, share and share alike.

" (b)  One-third to my brother James Johnston's nine children, namely—William Johnston, Elmer Johnston, Gracia Wimmer, Dorothy Moulton, Alfred Johnston, Harlan John-

ston, Forrest Johnston, Bruce Johnston and Lorraine Shedeck, share and share alike. In case any one of the above named children of my brother James Johnston shall predecease me or before the final distribution of my estate, then in that event their respective share or shares shall be paid to their lawful issue, share and share alike.

"(c) One-third to my brother William Johnston's four children, namely—Alice Fehlman, Clemna McIlrath, Ruth Johnston and Walter Johnston, share and share alike. In case any one of the above named children of my brother William Johnston shall predecease me or before the final distribution of my estate, then in that event their respective share or shares shall be paid to their lawful issue, share and share alike.

"TENTH: I do specifically and intentionally omit to provide for any other person or relative, as it is my specific intention to leave my property to be distributed as previously set forth. . . ."

iii. At the time of decedent's death section 901 of the Probate Code read in part as follows:

"The executor, when no compensation is provided by the will or he renounces all claim thereto, or the administrator, shall receive commissions upon the amount of estate accounted for by him, as follows: For the first thousand dollars, at the rate of seven per cent; for the next nine thousand dollars, at the rate of four per cent; for the next ten thousand dollars, at the rate of three per cent; for the next thirty thousand dollars, at the rate of two per cent; and for all above fifty thousand dollars, at the rate of one per cent."[1]

iv. By an amendment to section 901 of the Probate Code effective September 7, 1955, the fee schedule was increased as follows:

| Size of Estate | | Former Rates | New Rates[2] |
|---|---|---|---|
| First | $ 1,000 | 7% | 7% |
| Next | 9,000 | 4 | 4 |
| Next | 10,000 | 3 | 3 |
| Next | 30,000 | 2 | 3 |
| Next | 100,000 | 1 | 2 |
| Next | 350,000 | 1 | 1-½ |
| Over | 500,000 | 1 | 1 |

[1]Hereinafter the rates in effect pursuant to section 901 of the Probate Code at the time of decedent's death on July 14, 1953, will be referred to as the "old rates."

[2]The rates in effect pursuant to section 901 of the Probate Code effective on and after September 7, 1955, will be referred to as the "new rates."

v.    Section 910 of the Probate Code reads as follows:

"Attorneys for executors and administrators shall be allowed out of the estate, as fees for conducting the ordinary probate proceedings, the same amounts as are allowed by the previous article as commissions to executors and administrators; and such further amount as the court may deem just and reasonable for extraordinary services."

vi.    On October 28, 1955, the executor filed his first account current and a petition for statutory fees of the executor and the attorney for the executor.

vii.    On December 9, 1955, the probate court settled the first account current and ordered the payment of statutory fees of the executor and the attorney for the executor, calculated in accordance with the provisions of section 901 of the Probate Code in effect at the time of decedent's death (see iii., *supra*).

## QUESTIONS

*First*: *Did the will create a trust in the remaining assets of the estate?*

This question must be answered in the negative and is governed by these pertinent rules:

█    (1) A will is to be construed according to the intention of the testator.   Where his intention cannot have effect to its full extent, it will be given effect so far as it is possible to do so.   (Prob. Code, § 101; *Estate of Akeley*, 35 Cal.2d 26, 28 [215 P.2d 921, 17 A.L.R.2d 647].)

█    (2) A will must be read as a whole, and all parts thereof must be construed together in relation to each other to form, so far as possible, a consistent whole.   (*Estate of Northcutt*, 16 Cal.2d 683, 689 [4] [107 P.2d 607].)

If the foregoing rules are applied to this case and appellant's contention that the will should be construed as creating a trust is accepted, the intention of the testatrix would be defeated *in toto*, since the trust would be void as violating the rules against restraint on alienation.   Section 715.1 of the Civil Code provides:   "The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a period longer than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies.   The lives selected to govern the time of suspension must not be so numerous or so situated that evidence of their deaths is likely to be unreasonably difficult to obtain."

■ It is likewise settled that it is not the probability of a violation of rules against remoteness or restraints on alienation that brings such rules into operation, but only the bare possibility as such possibility exists at the date of the inception of the trust. (*Estate of Gump,* 16 Cal.2d 535, 547 [3] [107 P.2d 17]; *Sheean* v. *Michel,* 6 Cal.2d 324, 328 [57 P.2d 127]; *Estate of Sahlender,* 89 Cal.App.2d 329, 348 [12] [201 P.2d 69].)

■ The language used by the testatrix in her will directing that all other assets be held and administered by the executor of her estate ''until they liquidate themselves'' clearly indicated a desire on the part of the testatrix that final distribution of her estate be delayed by her executor until such time. Therefore, it is possible that the absolute power of alienation would be suspended for a period longer than 21 years plus a period of gestation after some life in being at the time of the creation of the interest.

■ To constitute a valid express trust, it is essential that there should be (1) a trustee, (2) an estate conveyed to him, (3) a beneficiary, (4) a legal purpose, and (5) a legal term. ■ Where a trust is void as an illegal restraint upon alienation, no title or right is acquired by either the trustee or any of the beneficiaries, and thus the trust is void as to the property attempted to be devised in trust. (*In re Walkerly,* 108 Cal. 627, 650, 660 [41 P. 772, 49 Am.St.Rep. 97].)

■ *Second*: *In fixing the statutory fees of the executor and the attorney for the executor, should they be predicated upon the statute in effect at the time of the settlement of the account and making of the order allowing compensation, or on the basis of the statute in effect at the date of death?*

We are of the opinion that the commissions of the executor and his attorney should be the amount of the statutory commissions in effect at the time of the settlement of the account and making of the order allowing compensation, to wit, in the instant case in accordance with the provisions of section 901 of the Probate Code as amended and effective September 7, 1955.

In *Estate of Spires,* 126 Cal.App. 174 [14 P.2d 340], decedent died January 3, 1924, and her will was admitted to probate on the 23d day of that month. The petition of the executors claiming a fee for extraordinary services was filed March 17, 1930, wherein a fee in excess of the amount allowable under the law in effect at the time of death was requested. A legatee under the will objected. As of the date of decedent's

death the law provided that the court could allow extra compensation provided the total amount of such extra compensation did not exceed one-half the amount of the commissions regularly allowed by the section. In 1925 the section was amended by omitting the limitation and thereby left the amount of extra compensation entirely within the discretion of the court.

The probate court found that the services were worth in excess of the amount allowable under the law in effect at the date of death. However, for the reason that it believed its powers to be restricted to the law as it existed at the date of death, and not as it existed at the time of the allowance of the fees, it did not make an allowance in excess of the limited amount. The executors appealed and the appellate court reversed the order, the court stating at page 177: "But we think that there is no such vested right in the benefit of the limitation. 'The right of inheritance and testamentary disposition is entirely the creation of the statute and the heirs, devisees and legatees take the property subject to such burdens as the legislature has seen fit to impose upon it. . . . While it is true that the descent is cast and the property of the decedent vested in the devisees and legatees, or in the heirs, at the moment of the death of the deceased, it is also true that they take the property, subject to the payment of the expenses of administration. . . .' (Citation.) *On the other hand, the right of the executor to a defined rate or standard of compensation is not vested as of the date of the decedent's death, nor even as of the date when he qualified as executor, but such right first accrues at the time when by appropriate order the amount of compensation payable to him is determined and allowed.* And since the right of an executor to compensation for extraordinary services is not established or vested until allowed by the court in the exercise of its discretion, it follows as a direct consequence that the law in force at the time when the order is made constitutes the only law by which the power of the court is to be governed." (Italics added.)

The weight of authority in the United States is to the effect that the law in force at the time of the settlement of the account, and not at the date of death, governs the amount of compensation allowed executors, administrators and their attorneys. (See 91 A.L.R. 1421-1422; *In re Donovan's Estate*, 266 Mich. 362 [253 N.W. 552 at 553, 91 A.L.R. 1418]; *In re Dewar's Estate*, 10 Mont. 426 [25 P. 1026 at 1029]; *In re Hildebrand's Estate*, 57 N.M. 778 [264 P.2d 674 at 677 [2]];

*In re King's Will,* 121 Misc. 530 [201 N.Y.S. 239 at 240] ; *In re Daly's Estate,* 99 Misc. 203 [165 N.Y.S. 792 at 796 [3]] ; *In re Barker,* 230 N.Y. 364 [130 N.E. 579, 581 [4]] ; *In re Leigh's Estate,* 196 Iowa 1102 [195 N.W. 1005 at 1007 [2]] ; *Brown's Estate* v. *Hoge,* 198 Iowa 373 [199 N.W. 320 [1]] ; *In re Barrett's Estate,* 124 Misc. 699 [209 N.Y.S. 678 at 679 [1]] ; *cf. Estate of Carver,* 123 Cal. 102 [55 P. 770].)

It is likewise settled that the right of an executor, administrator, or attorney for either, to ordinary compensation is absolute but does not accrue until an order for its payment is made. (*Cf. Estate of Roberts,* 27 Cal.2d 70 at 76 [7] [162 P.2d 461] ; *Estate of Carver, supra,* at 103.)

The imposition of probate fees on the estates of decedents who died before September 7, 1955, does not involve the imposition of a new or additional burden on such estates. In *Schwan* v. *Superior Court,* 204 Cal. 51 [266 P. 532], it was held that the Legislature was not prohibited from making changes in procedural matters applicable to estates of decedents who died prior to the effective date of such changes. The present change in the law was a mere procedural change in which the heirs and devisees have no vested rights.

Section 901 of the Probate Code recognizes this rule. The section reads in part thus: "The executor, when no compensation is provided by the will or he renounces all claim thereto, or the administrator, shall receive commissions upon the amount of estate *accounted for by him. . . .*" (Italics added.)

It is likewise settled that the fees of administrators, executors, and their attorneys for administering an estate do not arise from contract but are founded upon statutory enactment. (*Gaines* v. *Reutch,* 64 Md. 517 [2 A. 913 at 914].)

*Third: Should the executor include in his account property belonging to the estate and situated in Texas, and should the executor and his attorney be allowed fees on the amount thereof?*

No. Section 901 of the Probate Code provides that the executor "shall receive commissions upon the amount of the estate accounted for by him . . .," while section 920 of the Probate Code provides that "Every executor and administrator is chargeable in his accounts with all of the estate of the decedent which comes into his possession, and with all the income, issues and profits of the estate. . . ."

The rule is accurately set forth in *Estate of Simmons,*

43 Cal. 543, 550, as follows: "We are of the opinion that an administrator cannot be said to have 'accounted for' an estate, in the sense of the statute, unless he shall first have taken it into possession. He is charged by the statute, as we have already seen, with the value of 'the whole of the estate of the deceased which may come into his possession,' etc. (§ 216) ; and it is made his duty to 'take into his possession all the estate of the deceased, real and personal.' (§ 194.) When he shall have taken the property into possession and accounted for it, he is entitled to compensation by way of commissions upon its value. Unless he take it into possession, he is not charged in his account with its value. He may, and doubtless would, incur a responsibility, should he fail to take it into possession when he lawfully might, if by such failure it should become ultimately lost to those entitled to its benefits; but as affording a basis for the allowance of commissions, the value of the estate which has been taken into possession, and having been in possession has been accounted for, is alone regarded." (See also *Estate of Lampman,* 15 Cal.2d 212, 215 [100 P.2d 488] ; *In re Ricaud,* 70 Cal. 69, 71 [11 P. 471] ; *Estate of Boggs,* 33 Cal.App.2d 30, 32, 33 [90 P.2d 814].)

The executor of the domiciliary estate not having possession of the property in Texas was not chargeable in his account with its value, and was therefore not entitled to fees predicated upon the value thereof.

The order is reversed insofar as it fixes the compensation of the executor and attorney for the executor upon the basis provided by law prior to September 7, 1955, and the cause is remanded with directions to the probate court to enter an order in accordance with the views expressed herein. In all other respects the order is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.