[S. F. No. 9962. In Bank.—May 7, 1924.]

## RAY L. RILEY, as Controller, etc., Appellant, v. FREDERICK PAXTON HOWARD et al., Respondents.

[1] INHERITANCE TAX—ACTION TO COMPEL TRANSFER TAX—ABSENT DEFENDANTS—STATUTE OF LIMITATIONS—TIME.—An action to compel the payment of a transfer tax, as imposed by the Inheritance Tax Act of 1893, upon the right to transfer shares of corporate stock, was not, as to certain defendants who were absent from the state after the cause of action had accrued, barred by the statute of limitations where, conceding the applicability of subdivision 1 of section 338 of the Code of Civil Procedure to the case, the time, computing it from the day on which the absent defendants came within the state to the day on which the petition was filed, would not amount to a full period of three years.

[2] ID.—TRANSFER OF SHARES OF STOCK BY TRUST AGREEMENT—ACTION TO COMPEL PAYMENT OF TAX—ACT OF 1893—STATUTE OF LIMITATIONS.—Where shares of corporate stock were transferred to a trustee under a trust agreement providing, among other things, that upon the death of the trustor the trustee should make periodical payments out of dividends to named persons, and that the trust should terminate upon the death of the daughter of the trustor, whereupon the shares of stock were to be delivered and belong to certain beneficiaries, and the agents of the state had no knowledge nor means of knowledge of the existence of said trust agreement until almost eight years after its execution, the absolute failure or refusal on the part of the trustee and the beneficiaries to set in motion the machinery of the inheritance tax act, or in anywise to recognize or conform with its requirements, stripped them of the protection of the statute of limitations in an action, commenced after the death of the trustor and while the trustee continued to hold said shares pursuant to said trust agreement, to compel the payment of a transfer tax imposed by the Inheritance Tax Act of 1893.

[3] ID.—LIEN CREATED BY ACT OF 1893 AND AMENDMENTS—EFFECT OF ACT OF 1905 UPON—REPEALS—TRANSFER TAXES.—The adoption of the Inheritance Tax Act of 1905 did not in any way affect or disturb any lien created by the act of 1893, or any amendment thereto; and the act of 1905 with its repealing clause did not operate to deprive the state of the right to collect or receive all transfer taxes accrued under the act of 1893, which had not been paid or ordered to be paid to the state at the time the repeal took effect, July 1, 1905.

[4] ID.—TAXABILITY OF INHERITANCES—HOW DETERMINED.—The taxability of inheritances, devises, etc., such as are provided for by the several inheritance tax acts, must be determined by the law in effect at the time the transfer is made and the market value thereof as of the date of the death of the decedent.

[5] ID.—ACT OF 1893—CONSTRUCTION OF.—The Inheritance Tax Act of 1893 was drawn on the theory that a disclosure or discovery of all property or interest subject to the tax would be made by appropriate proceedings to the court, and to the officers charged with the enforcement and collection of the tax, and if not brought to the attention of the proper officers by such a proceeding, that it should be brought to the attention of the court and the law officers by the trustees or beneficiaries named in the trust instrument.

[6] ID.—DETERMINATION OF TAX—STATUTE OF LIMITATIONS.—In such action to compel the payment of a transfer tax, conceding the soundness of the argument advanced by defendants that no tax can exist until the amount of the tax is ascertained or determined and for the reason that there has been no appraisement and assessment of the shares of capital stock in the instant case, the tax never became "immediately" or "due and payable" at all, it follows that the statute of limitations has never been set in motion and the state's action has not become barred.

[7] ID.—TIME OF VESTING OF RIGHTS OF DEFENDANTS—OPERATION OF ACTS.—In such action, it would make no difference, so far as the taxability of the stock is concerned, whether the right of defendants in the property vested at the time of the execution of the trust agreement or upon the death of the decedent, there having been no moment of time since 1893 that there was not in existence an inheritance tax act.

[8] ID.—PLEADING—INTEREST OF CORPORATION—INSUFFICIENCY OF PETITION.—It not having been alleged in the petition in such action that the corporation in which the shares of stock in controversy were held asserted any right to or interest in said shares of stock,

5. Rule for construction of inheritance tax statutes, note, Ann. Cas. 1915C, 322.

the allegations of the petition did not state a cause of action against said corporation.

[9] ID.—PLEADING—LACHES—RELIEF.—In such action, it cannot be said as a matter of law that the petition upon its face shows laches on the part of the corporation which would be sufficient to justify the denial of the relief sought.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed in part; affirmed in part.

The facts are stated in the opinion of the court.

Hartley F. Peart and H. C. Lucas for Appellant.

Charles W. Slack, H. S. Young, F. A. Denicke and Chauncey S. Goodrich for Respondents.

SEAWELL, J.—The original petition in this proceeding was filed June 19, 1914, in the superior court of the city and county of San Francisco, to compel the payment of a transfer tax, as imposed by the Inheritance Tax Act of 1893 (Stats. 1893, p. 193), upon the right to transfer 4,995 shares of the capital stock of the Howard Investment Company, a corporation, made by Charles Webb Howard to Central Trust Company of California, a corporation, as trustee, to be held by it for the use and benefit of the several respondents herein, excepting defendants Trust Company and Investment Company. The Anglo-California Trust Company, a corporation, was, on July 2, 1912, substituted as trustee in place of Central Trust Company of California, the original trustee, and it has since continued to act as such. The action is continued in the name of Ray L. Riley, the successor in office of said John S. Chambers.

Demurrers to a third amended petition were sustained without leave to amend. The appeal therefore is from the judgment sustaining said demurrers. The grounds of demurrer are that the allegations of the petition do not state facts sufficient to constitute a cause of action and that it appears upon the face thereof that the causes of action are barred by the provisions of section 338, subdivision 1, of the Code of Civil Procedure. The petition sets out two causes of action. The first alleges that said Charles Webb Howard

made and executed said transfer in contemplation of his death and without valuable or adequate consideration. The second cause alleges that he intended that such transfer should take effect in possession and enjoyment at and after his death and that it was also made without valuable or adequate consideration. The shares of stock transferred are alleged to have been of the value of $600,000 at the time the trust instrument was executed, to wit, October 1, 1903. The inheritance tax act in effect at that time was the act of 1893 and the act in effect at the time of the death of Charles Webb Howard, July 17, 1912, was the act of 1905 (Stats. 1905, p. 374), together with such amendments as had been made to each act.

By the provisions of the trust instrument 4,995 shares of the capital stock of the Howard Investment Company, held in the name and ownership of Charles Webb Howard, were by him indorsed in blank and placed in trust subject to certain covenants, agreements and reservations. He was made the attorney in fact of the trustee, irrevocably, to vote each and all shares of stock as he might deem advisable and to give or grant the consent of or offer the opposition of said shares to any corporate act and to receive as often as declared the net amount of all dividends. Upon his death his son, Frederick Paxton Howard, if living, was to be appointed attorney in fact, irrevocably, of said trustee and to exercise, jointly with said trustee, the same powers that were conferred upon the father, Charles Webb Howard. After the death of said Howard, senior, and while the trust continued to exist, the trustee was directed to pay to his daughter, Maud Howard, and to his son, Frederick Paxton Howard, $250 a month each. Lesser amounts were to be paid quarterly to Bertha Shafter Goodrich, Chauncey Shafter Goodrich, Elizabeth Ely Goodrich, Frances Juliana Webster Goodrich. Said trust was to terminate and be at an end upon the death of his daughter, Maud, upon which event said shares of stock were to belong to and become vested in the following persons, their heirs or assigns, in named proportions: Frederick Paxton Howard, Bertha Shafter Goodrich, Elizabeth Ely Goodrich, and Frances Juliana Webster Goodrich. Charles Webb Howard specifically reserved unto himself the power of absolute revocation and dissolution of said trust and upon such revocation all of the shares and

certificates of stock were to revert to and belong to him absolutely as in his first and former estate. A written notice of revocation served upon "the trustee was all that was required to terminate the trust. The trustee accepted the trust subject to this and other conditions not material to the main questions presented. Frederick Paxton Howard and Maud Howard, being lineal descendants of decedent, Charles Webb Howard, were properly eliminated from the proceeding by the ruling of the court below for the reason that the act of 1893, the law in effect at the time the transfer was made, specifically exempted from taxation a transfer made by a father to his children (Stats. 1893, p. 193). As to the other beneficiaries the allegations of the petition are that they are strangers in blood to said decedent and this being so their interests and property are subject to a transfer tax unless the bar of the statute can be made to apply to their case or unless for other reasons their interests are not liable for a transfer tax.

Charles Webb Howard died without revoking or changing in any respect said trust instrument. His estate, amounting to $131.70, was duly probated. Some time after his death his widow, Emma Shafter Howard, brought an action in the superior court of the city and county of San Francisco against his estate and recovered judgment for her community interest, 2,497.5 shares of said stock, which have been delivered to her, leaving the remaining 2,497.5 shares in the possession of the trustee subject to delivery as provided by the terms of the trust instrument upon the death of the surviving daughter, Maud Howard. It is the claim of appellant, State Controller, that the shares remaining in the hands of the trustee for the beneficiaries named in said instrument or their successors, saving and excepting the son and daughter, are subject to an inheritance or transfer tax.

The petition contains the allegation that the trust instrument was not placed upon record, but was kept by the trustee as a private document and its existence was withheld from public notice and the agents of the state had, therefore, no knowledge of or any means of knowing of its existence until June 21, 1911, on which day its existence became known. [1] It is further alleged that defendants Edward F. Goodrich, Elizabeth Goodrich Whitney, James L. Whitney, Frances Goodrich Leon, and Maurice Leon were each

absent from the state for a period greater than three years
immediately prior to the filing of the original petition and
after the cause of action herein had accrued (sec. 351, Code
Civ. Proc.). The action, therefore, as to the absentee de-
fendants, even if it be conceded that the provision of sec-
tion 338, subdivision 1, is, as claimed by respondents,
applicable to their case, would not be barred upon a mere
reckoning of the time which had run. In other words, if
the time be computed from the day on which the absent de-
fendants came within the state to the day on which the
petition was filed, it would not amount to a full period of
three years. Section 351 of the Code of Civil Procedure,
upon this theory of the case, would stand in the way of the
plea of the three years' bar of section 338, subdivision 1,
*supra*, so far as the bare question of the absence of certain
of the defendants from the state is concerned.

Appellant places the state's right to maintain the action
upon further grounds, which may be thus epitomized: That
the statute of limitations has not and cannot run against
the state's interest; that there has been no repudiation of the
trust; that the trustee holds in trust property in which
the state has a vested interest (*Estate of Stanford*, 126 Cal.
112 [45 L. R. A. 788, 54 Pac. 259, 58 Pac. 462], reaffirmed
in *Trippet* v. *State*, 149 Cal. 521 [8 L. R. A. (N. S.) 1210,
86 Pac. 1084]); and it has not and cannot be delivered to
the beneficiaries until the death of a person in being; that
the obligation of the trustee to deliver said property to the
beneficiaries has not yet matured. (*Chambers* v. *Gallagher*,
177 Cal. 704, 171 Pac. 931].)

[2] We think the absolute failure or refusal on the part
of the trustee and the beneficiaries to set in motion the ma-
chinery of the Inheritance Tax Act, or in anywise to recog-
nize or conform with its requirements, has stripped them of
the protection which the shield of the statute may have
afforded.

[3] Contrary to the claim of respondents, it must be
announced at the outset as the law of this state, settled be-
yond the point of controversy, that the adoption of the In-
heritance Tax Act of 1905 did not in any way affect or
disturb any lien created by the act of 1893, or any amend-
ment thereto. It has been repeatedly held by this court that
the act of 1905 with its repealing clause did not operate to

deprive the state of the right to collect or receive all transfer taxes accrued under the act of 1893, which had not been paid or ordered to be paid to the state at the time the repeal took effect, July 1, 1905. (*Estate of Martin,* 153 Cal. 225 [94 Pac. 1053], and cases cited; *Riley* v. *Havens, ante,* p. 432 [225 Pac. 275]; *Hunt* v. *Wicht,* 174 Cal. 205 [L. R. A. 1917C, 961, 162 Pac. 639]; *Chambers* v. *Gallagher, supra; Nickel* v. *State,* 179 Cal. 126 [175 Pac. 641]; *Estate of Brix,* 181 Cal. 667 [186 Pac. 135]; *Estate of Potter,* 188 Cal. 55 [204 Pac. 826].) [4] Many other authorities might be cited to the effect that the taxability of inheritances, devises, etc., such as are provided for by the several inheritance tax acts, must be determined by the law in effect at the time the transfer is made and the market value thereof as of the date of the death of the decedent. The means and mode for the collection of previously accrued and uncollected taxes were continued in force. Beginning with the act of 1893 and continuing through all subsequent acts the tax prescribed therein if not paid as provided by said acts, together with the interest thereon, "shall be and remain a lien on said property *until the same is paid.*" (Italics ours.)

This case cannot be brought within the rule announced in *Chambers* v. *Gallagher, supra,* and *Chambers* v. *Gibson,* 178 Cal. 416 [173 Pac. 752]. The facts are widely different. The latter case was decided upon the authority of the former. That case involved the right of the state to recover an inheritance tax from the executor of an estate in a personal action commenced more than twelve years after distribution had been made to the heirs. The petitioner prayed that the court appoint an appraiser to appraise the property in said estate and ascertain the amount of such tax; that a citation be issued to the executor to appear before such appraiser and be examined under oath, and show cause why he should not be held chargeable for the payment of said tax, and for judgment that the executor be declared liable for the payment and directed to pay such tax to the treasurer of the county. A demurrer was sustained to the petition on the ground that the action was barred by the provisions of section 338, subdivision 1, of the Code of Civil Procedure. The bar of said statute having run prior to the enactment of section 4 of the revised Inheritance Tax Act of 1913 (Stats. 1913, p. 1066), which act purported to

remove the bar of the statute of limitations with respect to taxes which were barred at the time of its enactment, it was held that the act could not have a retrospective effect and revive causes of action which had theretofore become barred. The court in fixing the time when the statute of limitations would commence to run in such a case used the following guarded language: "We do not think the provisions of the act as it stood prior to 1913 show an intent to prevent the running of the statute of limitations in favor of the executor *after the distribution of the estate.* The scheme of the act was that the executor should see that the taxes were paid before he had made final settlement of his estate, or within thirty days thereafter. *His obligation became matured at the expiration of such thirty days at all events.* The intention was that the court having charge of the administration should not order the settlement of the estate or the discharge of the executor until such tax had been paid. Nothing is said in the law regarding the operation of the statute of limitations or purporting to prevent it from running against such demand, or to differentiate it from any other matured obligation to the state. The act of 1913 expressly declaring such intent is a strong indication that the legislature itself did not suppose that it had previously done so. Doubtless the liability of the executor, under the terms of the act, continued *after the settlement* of the estate, if the tax was not previously paid, and *could be enforced* in a proper proceeding by the district attorney for that purpose under the provisions of the act. But there is nothing in the language of the act which declares that the statute does not run against such liability, as in other cases." (Italics ours.)

By the language quoted it is clear that that case is not an authority in anywise supporting the claim that the statute of limitations has run against the state's right to compel the payment of a transfer tax on the shares of stock held by the trustee, as in the instant case, for future distribution to the beneficiaries. In other words, the trustee's obligation to the beneficiaries has not become matured. An analysis of the act cannot fail to strengthen the conviction that the tax in suit is not barred by the provisions of section 338, subdivision 1, *supra.* Section 1 of said act of 1893, as amended in 1903 (Stats. 1903, p. 268), provided that: "All

property which shall pass, by will or by the intestate laws of this state, from any person who may die seized or possessed of the same while a resident of this state, or if such decedent was not a resident of this state at the time of death, which property, or any part thereof, shall be within this state, or any interest therein or income therefrom which shall be transferred by deed, grant, sale, or gift, made in contemplation of the death of the grantor or bargainer, or intended to take effect in possession or enjoyment after such death, to any person or persons, or to any body politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled, in possession or expectancy, to any property, or to the income thereof, other than to or for the use of his or her father, mother, husband, wife, lawful issue, the wife or widow of a son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the state of California, . . . or to any lineal descendant of such decedent born in lawful wedlock, . . . by reason whereof any such person or corporation shall become beneficially entitled, in possession or expectancy, to any such property, or to the income thereof, shall be and is subject to a tax of five dollars on every hundred dollars of the market value of such property, and at a proportionate rate for any less amount, to be paid to the treasurer of the proper county, as hereinafter defined, for the use of the state; and all administrators, executors, and trustees shall be liable for any and all such taxes until the same shall have been paid, as hereinafter directed; . . . ''

Section 2, as amended in 1895 (Stats. 1895, p. 33, sec. 1), provided: ''When any grant, gift, legacy, or succession upon which a tax is imposed by section one of this act shall be an estate, income, or interest for a term of years or for life, or determinable upon any future or contingent event, or shall be a remainder, reversion, or other expectancy, real or personal, the entire property or fund by which such estate, income, or interest is supported, or of which it is a part, shall be appraised immediately after the death of the decedent, and the market value thereof determined in the manner provided in section eleven of this act, and the tax prescribed by this act shall be immediately due and payable to the treasurer of the proper county, and together with the in-

terest thereon, shall be and remain a lien on said property until the same is paid; *provided,* that the person or persons, or body politic or corporation, beneficiary interested in the property chargeable with said tax, may elect not to pay the same until they shall come into the actual possession or enjoyment of such property, and in that case such person or persons, or body politic or corporate, shall execute a bond to the people of the state of California, in a penalty of twice the amount of the tax arising upon personal estate, with such sureties as the said superior court may approve, conditioned for the payment of said tax, and interest thereon, at such time or period as they or their representatives may come into the actual possession or enjoyment of such property, which bond shall be filed in the office of the county clerk of the proper county; *provided further,* that such person shall make a full and verified return of such property to said court, and file the same in the office of the county clerk within one year from the death of the decedent, and within that period enter into such security, and renew the same every five years.''

Section 4 of the act provided that all taxes imposed thereby, *unless otherwise therein provided for,* shall be due and payable at the death of the decedent, and if the same are paid within eighteen months, no interest shall be charged and collected thereon, but if not so paid interest shall be charged and collected from the time said tax accrued; *provided,* that if said tax be paid within six months from the accruing thereof, a discount should be allowed and deducted therefrom. In all cases where the executors, administrators, or trustees failed to pay such tax within eighteen months from the death of the decedent, they were required to give a bond for its payment together with interest. Section 5 of said act provided for the modification of the imposition of the extreme penalty provided for in section 4 for the non-payment of said tax by reason of claims made upon the estate, necessary litigation, or other unavoidable cause of delay, for which reason the estate cannot be settled at the end of eighteen months from the death of the decedent. Section 6 makes it the duty of any administrator, executor, or trustee having in charge or trust any legacy or property for distribution, subject to said tax, to deduct the tax therefrom, or if the legacy or property be not money, he shall

collect the tax thereon, upon the market value thereof, from the legatee or person entitled to such property, and he shall not deliver, or be compelled to deliver, any specific legacy or property subject to tax to any person until he shall have collected the tax thereon; but if the estate be not in money, the executor or trustee shall make application to the superior court to make an apportionment, if the case require it, of the sum to be paid into his hand for such legatees, and for such further order relative thereto as the case may require. The act gives all executors, administrators and trustees the power to sell so much of the property of the decedent as would enable him to pay said tax in the same manner as they may be able by law to do for the payment of debts of an estate. Section 11 provided that when the value of any inheritance or other interest subject to the payment of such tax is uncertain, the superior court in which the probate proceedings are pending, on the application of any interested person or upon his own motion, shall appoint some competent person as appraiser, as often as and whenever occasion may require, whose duty it shall be forthwith to give notice to all persons known to have or claim an interest in such property. From the report of the appraiser the court shall assess and fix the market value of all inheritances or other interest and the tax to which the same is liable, and shall immediately cause notice thereof to be given to all parties known to be interested therein.

Section 14 provided: "If it shall appear to the superior court, or judge thereof, that any tax accruing under this act has not been paid according to law, it shall issue a citation, citing the persons known to own any interest in or part of the property liable to the tax to appear before the court on a day certain, not more than ten weeks after the date of such citation, and show cause why said tax should not be paid. The service of such citation, the time, manner, and proof thereof, and the hearing and determination thereon, and the enforcement of the determination or decree, shall conform to the provisions of chapter 12, of Title 11 of Part 3 [sections 1704 to 1724] of the Code of Civil Procedure; . . . " By section 15 it is provided that: "Whenever the treasurer of any county shall have reason to believe that any tax is due and unpaid under this act, after the refusal or neglect of the persons interested in the property liable

to said tax to pay the same, he shall notify the district attorney of the proper county, in writing, of such failure to pay such tax, and the district attorney so notified, if he have probable cause to believe a tax is due and unpaid, shall prosecute the proceeding in the superior court, as provided in section 14 of this act, for the enforcement and collection of such tax.''

That the act has application to a trust arrangement such as the one before us is not, and, we think, cannot be, disputed. While this is true, the machinery provided by the act for its enforcement has more direct or special adaptability to the simple administration of the estates of deceased persons and to estates involving testamentary trusts than to a trust instrument not directly connected with either. [5] The act was drawn on the theory that a disclosure or discovery of all property or interest subject to the tax would be made by appropriate proceedings to the court, and to the officers charged with the enforcement and collection of the tax, and if not brought to the attention of the proper officers by such a proceeding, that it should be brought to the attention of the court and the law officers by the trustees or beneficiaries named in the trust instrument. By section 6 it was made the duty of all trustees ''having in charge or trust any legacy or property for distribution, subject to the said tax'' to deduct the tax therefrom, and if ''the legacy or property be not money he [executor or trustee] shall collect the tax thereon upon the market value thereof from the legatee or person entitled to such property, and he shall not deliver or be compelled to deliver any specific legacy or property subject to tax to any person until he shall have collected the tax thereon.'' It was also the duty of the beneficiaries of the trust, subject as such to a transfer tax, to make known that fact to the officers charged with the duty of collecting the same. The various provisions of the act to that effect are numerous and too plain to require restatement. Section 2 provided that when any grant, gift, legacy, or succession upon which a tax is imposed by section 1 shall be an estate, income, or interest for a term of years or for life, or determinable upon any future or contingent event, or shall be a remainder, reversion, or other expectancy, real or personal, the entire property or fund by which the same is supported ''shall be *appraised immediately*

*after the death of the decedent"* and the market value thereof determined, and the tax prescribed by the act shall be *"immediately due and payable* to the treasurer of the proper county,'' etc. (Italics ours.)

Instead of paying the tax a bond may be executed by the persons or corporation beneficially interested in the property chargeable with said tax to the state conditioned for its payment with interest when they or it shall come into the actual possession or enjoyment of such property. Such person shall make a full and verified return of such property to the court and file the same in the office of the county clerk within one year from the death of the decedent and within that period enter into such security and renew the same every five years. Under such procedure the payment of the tax may be postponed for a number of years. The bar of the statute would not under such circumstances become available. The tax could not be actually paid in any case *at the death* of the decedent. It must first be determined by an appraisement of the property or interest which supports it, as provided by the act. By section 11 the court in which the proceedings are pending, upon the application of an interested party or upon its own motion, shall appoint an appraiser to fix the value of the property or taxable interest ''as often and whenever occasion may require.'' This may be done notwithstanding the fact that more than three years have passed since the death of the decedent. The value of the property or interest is to be determined as of the day of death and not in reference to a subsequent day.

*Chambers* v. *Gallagher, supra,* as above pointed out, goes no further than to hold that any personal action brought against the executor more than three years after final distribution has been made, is subject to the bar of the statute. That authority does not hold that the statute commenced to run immediately upon the death of the decedent. On the contrary, it was said that the executor should have seen to it that the taxes were paid before he made final settlement of his estate, or within thirty days thereafter, and the obligation to pay the taxes was held to have matured at the expiration of such thirty days in all events. In the instant case the trustee has the property in its possession and its obligation to deliver it to the beneficiaries has not yet matured.

The estate of the decedent, Howard, as reported to the court, amounted to $131.70. Distribution was made of that amount. Neither the attention of the court nor anyone else was called to the fact that a large estate, a portion of which, at least, was subject to the payment of a tax, had been transferred by deed to a trustee by a private instrument. Neither were the parties benefited thereby nor the subject matter of the transaction brought to the attention of any court in any proceedings in which their liability to pay a tax could have been legally determined. In *Chambers* v. *Gallagher, supra,* as in all the cases cited, the parties and the subject matter were before the court. Every fact necessary to authorize the court and the law officers to compel the payment of the taxes was known. Former Chief Justice Shaw, in delivering the opinion for the court, said that it was the intention of the act "that the court having charge of the administration should not order the settlement of the estate or the discharge of the executor until such tax had been paid." But the court having ordered the settlement of the estate, and the suit being one to compel the executor to personally make good the taxes after a long lapse of time it was concluded that the statute began to run not later than the day of the settlement of the estate. It was further said that "the liability of the executor, under the terms of the act, continued after the settlement of the estate, if the tax is not previously paid, and could be enforced in a proper proceeding by the district attorney for that purpose under the provisions of the act." Such an action, however, was subject to the bar of the statute.

It is clear upon authority that the cause of action did not accrue at the time of the death of the decedent. Whether the cause of action accrued at the time of the settlement of the estate, as held in *Chambers* v. *Gallagher, supra,* or whether under the provisions of section 4 it accrued within eighteen months from the death of the decedent, as held in *Ritcher* v. *Commonwealth,* 180 Ky. 4 [201 S. W. 456], in construing a section of a statute identical with section 4, and both being proceedings in which the whole situation was before the court, would afford respondents no assistance, as the point fixed by either of those cases when the statute begins to run has not been reached by any progressive steps

taken by respondents in the instant case. By their fault they have at no time initiated a proceeding by which they could claim the benefits provided by the statute. The law under such circumstances will not give them a greater benefit than they would have been entitled to had they pursued the course which it has defined. As stated before, the property subject to a tax is still in the hands of the trustee, and both it and the interested persons having failed to set in motion the only procedure which the Inheritance Tax Act contemplates, they will not for that reason be relieved of their legal obligations. If a will disposing of an estate subject to a tax should, innocently or with evil intent, be withheld from the records of a court for a period of three years and one day after the death of the testator, or if a person leaving a taxable estate should have been deceased for a like period before the fact of death became known, no court, we apprehend, under the act as framed, would hold that all claims to inheritance taxes were defeated by the three years' bar of the statute of limitations. This case is not distinguishable on principle from either of the above illustrations.

Our conclusion in this respect makes it unnecessary to discuss or decide the question whether the state, upon the death of the decedent, became vested with an interest in decedent's estate equal to the amount of taxes assessable against said property in the same sense that an estate vests in an heir upon the death of an ancestor, or whether the state became vested with a right, merely, to the tax. By this ruling other questions raised by respondents are also disposed of.

[6] It is the argument of respondents that no tax can exist until the amount of the tax is ascertained or determined, and, for the reason that there has been no appraisement and assessment of the shares of capital stock in the instant case, the tax has at no time become "immediately" or "due or payable" at all. Conceding the soundness of this argument it follows that the statute of limitations has never been set in motion and petitioner's action has not become barred. Nothing, therefore, stands in the way of the state's attempt to subject the property to the processes of the law. Such is the purpose of the action.

[7] Respondents claim a vested right to the property in suit by virtue of the trust instrument. It would make no difference, so far as the taxability of the stock herein is concerned, whether that right vested at the time of the execution of the instrument or upon the death of the decedent. There has been no moment of time since 1893 that there has not been in existence an Inheritance Tax Act (*Riley* v. *Havens, supra*). So the tax on the right to transfer must be appraised and assessed under the act of 1893 and the amendments thereto, or under the act of 1905, the act in effect at the time of the death of said decedent. If the latter act controls the matter, respondents Frederick Paxton Howard and Maud Howard might be placed in a worse position than they find themselves under the act of 1893, inasmuch as the act of 1905 provides for an imposition of a transfer tax, observing certain exemptions, upon gifts made to the children of a decedent, and the other respondents would in nowise be helped by being brought within the latter act. The fact that the trust instrument was subject to revocation by the trustor is not material, for the reason that there was no revocation made of the trust or transfer instrument.

[8] We are of the opinion that the allegations of the petition do not state a cause of action against the Howard Investment Company. It is made a party to the action, appellant states in his brief, "because the capital stock of that corporation constitutes the trust fund upon which the state has a lien until the tax is paid." It is not alleged that that company asserts any right to or interest in said shares of stock. If such right or claim should hereafter develop, said company may be brought in as a party defendant, but upon the face of the pleading we cannot now see that respondent company is anywise interested in the result of the action.

[9] It cannot be said as a matter of law that the pleading upon its face shows laches on the part of respondent company which would be sufficient to justify the denial of the relief sought. The state was not a party to nor did it have notice of any action brought in any court in which the subject matter of this controversy was at issue.

The judgment sustaining the demurrers without leave to amend as to Frederick Paxton Howard, Maud Howard, and

the Howard Investment Company, a corporation, is affirmed. As to the remaining respondents it is reversed.

Richards, J., Lennon, J., Waste, J., Lawlor, J., Myers, C. J., and Shenk, J., concurred.

Rehearing denied.

All the Justices concurred.