[L. A. No. 21178.   In Bank.   Oct. 23, 1951.]

Estate of GEORGE OWEN KNAPP, Deceased.   FREDERICK A. GODLEY, as Executor, etc., Appellant, v. STATE OF CALIFORNIA, Respondent.

Heaney, Price, Postel & Parma for Appellant.

James W. Hickey, Chief Inheritance Tax Attorney, Morton L. Baker and Raymond G. LaNoue, Deputy Inheritance Tax Attorneys, and Bert G. Wetherby, Assistant Inheritance Tax Attorney, for Respondent.

TRAYNOR, J.—The testator, George Owen Knapp, bequeathed to his son William Jared Knapp an annuity of $10,000 per year from each of five testamentary trusts, a total of $50,000 per year for life. Upon William's death his wife Louise Allen Knapp, if then living, was to receive an annuity of $15,000 per year from each of the five trusts, a total of $75,000 per year for life. Upon Louise's death, or upon William's death if Louise was not then living, the remainders were to go to certain named grandchildren of the testator.

In the first report filed by the state inheritance tax appraiser William's interest was appraised pursuant to section 13953[1] of the Revenue and Taxation Code, and the value of that interest was deducted from the value of the entire property involved at the date of the testator's death to determine the value of the remainders. Before any action was taken by the court on the report, William died leaving his wife Louise surviving. The inheritance tax appraiser filed a second report pursuant to section 13955[2] of the Revenue and Taxation Code, and the value of William's interest as determined under that section was deducted from the entire value of the property involved to determine the value of the remainders. In the first report William's interest was valued at $463,161.35 and the tax with respect thereto computed at $33,834.52. Louise's interest was valued at $96,346.65 and the tax with respect thereto computed at $7,534.67. In the second report William's interest was reappraised at $99,726.03 and the tax with respect thereto computed at $3,139.04. Louise's interest was reappraised at $546,032.04 and the tax with respect thereto recomputed at $66,804.81.

The executor filed objections to the second report. Upon the hearing it was stipulated that (a) at the death of William the tax on his life interest had not been determined; and (b) the only point in dispute related to the correctness of the tax charged against Louise. The court overruled the objections and entered its order fixing the inheritance tax in accord with the inheritance tax appraiser's second report. From that order the executor appeals.

When, as in the present case, a will creates a life interest and remainder interests in the same property, it is necessary to divide the value of the property at the date of

---

[1]"The value of a future, contingent, or limited estate, income, or interest is determined in accordance with the rules, methods, and standards of mortality and value that are set forth in the actuaries' combined experience tables of mortality, as extended, for ascertaining the values of life insurance policies and annuities and for determining the liabilities of life insurance companies, save that the rate of interest used in computing the present value of the estate, income, or interest is four (4) per cent per annum." (Rev. & Tax. Code, § 13953.)

[2]"If an annuity or a life estate is terminated by the death of the annuitant or life tenant or by the happening of a contingency, and the tax upon the transfer of the annuity or estate has not been determined, the value of the annuity or estate is the present value, at the date of the transferor's death, of the amount of the annuity or income actually paid or payable to the annuitant or life tenant during the period he was entitled to the annuity or was in possession of the estate." (Rev. & Tax. Code, § 13955.)

the decedent's death between the life interest and the remainders for the purposes of inheritance taxation. This division is generally made by deducting the value of the life interest from the total value of the property. The difference represents the value of the remainders. (Cal. Adm. Code, tit. 18, § 793.) "It is the settled law of this state that the inheritance tax is imposed upon the net clear value of what the transferee receives, and that to ascertain this the value of what he does not receive, in contemplation of law, must be deducted from the value of what the decedent left." (*Estate of Miller*, 184 Cal. 674, 682 [195 P. 413, 16 A.L.R. 694]; see 28 Am.Jur., Inheritance, Estate and Gift Taxes, § 232, p. 117; 47 Yale L. J. 1354, 1357.)

Under the foregoing rule the valuation of the life interest serves two purposes. It serves as a measure of the tax on its own transfer and also as the means of determining the value of the remainder interests. The Revenue and Taxation Code provides two alternative methods for determining its value, one based on the life tenant's life expectancy as of the date of the decedent's death (§ 13953), and the other based on the actual duration of his life when he dies before the determination of the tax. (§ 13955.) Reasonable symmetry suggests that whatever method is used to determine the value of the life interest for one purpose should also be used for the other. ■ By requiring the substitution of fact for probabilities, section 13955 calls for a more accurate apportionment of the taxes between the transfers of the life interest and the remainders than section 13953. Section 13955 cannot reasonably be construed as limited to the purpose of determining the tax on the transfer of the life interest alone.

Appellant agrees that since William died before the determination of the tax, his interest must be valued under section 13955. He agrees also that the value of the remainder interests is determined by deducting the value of the life interest from the value of the entire property. He contends, however, that in determining the value of the remainder interests, the value of William's interest must be determined under section 13953 by reference to William's life expectancy as of the date of decedent's death. This contention is based on the theory that, with the exception of a life interest valued under section 13955, the statutes require that all interests be valued as of the date of the decedent's death. Thus it is argued that if the remainder interests are to be valued as of that date, the value of the life interest used to determine the value of the

remainders must be its value as determined by the life tenant's life expectancy at that date rather than its value as determined by its actual duration.

This contention overlooks the fact that whether the life interest is valued under section 13953 or section 13955, it is still the value of that interest as of the date of the decedent's death that is being determined. Valuation as of that date is prescribed not only by the general provisions of section 13951[3] relating to property included in any transfer, but by the provisions of section 13952[4] relating specifically to an estate or interest for a term of years or for life. Thus, the value of a life interest determined under either section 13953 or 13955 is the value of that interest as of the date of the decedent's death. Section 13955 makes this clear by the specific provision that "the value of an annuity or estate *is the present value, at the date of the transferor's death,* of the amount of the annuity actually paid or payable to the annuitant or life tenant during the period he was entitled to the annuity or was in possession of the estate." (Italics added.) Such value is found by discounting back to the date of the decedent's death the payments paid or payable to the annuitant or life tenant while he lived.

If it were known at the date of the decedent's death exactly when the annuitant or life tenant would die, it would be known how many years he would receive the annuity or income specified. The annuity or estate for his life would be equivalent to an annuity or estate for a term for years, the value of which could be readily determined. Since no one can know how long an annuitant or life tenant will live, it is necessary to determine the probable duration of his life and to translate the annuity or estate for life into an annuity or estate for a term of years. That translation is generally made according to the combined experience tables of mortality, as extended, for ascertaining the value of life insurance policies and annuities. When the annuitant or life tenant dies,

[3]"For the purpose of this part, the value of property included in any transfer subject to this part, whether or not the transfer was made during the lifetime of the transferor, is the market value of the property as of the date of the transferor's death." (Rev. & Tax. Code, § 13951.)

[4]"In the case of a transfer of any estate, income, or interest (a) for a term of years or for life, or (b) determinable upon any future or contingent event, or (c) constituting a remainder, reversion, or other expectancy, the entire property by which the estate, income, or interest is supported, or of which it is a part, is valued as of the date of the decedent's death." (Rev. & Tax. Code, § 13952.)

and it is therefore known how long he lived and how· much he received, there is no need to resort to mortality tables, certainty has taken the place of probabilities and an annuity or estate for life has become an annuity or estate for years. The continued use of mortality tables would nullify the requirement of accuracy in valuation prescribed by section 13955, when the fact of the annuitant's or life tenant's death is known before the tax upon the transfer has been determined.

█ There is nothing expressed in the statutes or that can be reasonably implied therefrom that would justify placing one value on a life interest in determining the tax on its transfer and placing another value on that interest for deduction from the value of the entire property in determining what the remaindermen receive. That section 13955 was not intended to provide a method for evaluating the life interest solely for the purpose of determining the tax on its own transfer is made clear by the provisions of subsection 8 of section 8 of the Inheritance Tax Act of 1935. (Stats 1935, p. 1279.) Those provisions were codified in section 13953 to 13955 of the Revenue and Taxation Code.

Subsection 8 provided:

''The value of every future, or contingent or limited estate, income or interest, shall, for the purposes of this act be determined by the rule, methods and standards of mortality and of value that are set forth in the actuaries' combined experience tables of mortality. . . . When an annuity or a life estate is terminated by the death of the annuitant or life tenant, and the tax upon such interest has not been fixed and determined, the value of said interest *for the purpose of taxation under this act* shall be the amount of the annuity or income actually paid or payable to the annuitant or life tenant during the period for which such annuitant or life tenant was entitled to the annuity or was in possession of the life estate.'' (Italics added.)

Thus under the express language of the statute as it then read the valuation of the life estate on the basis of its actual duration was to be made, not solely for the purpose of taxing the transfer of that interest, but for the purpose of taxation generally under the act. Similarly, under the codification of subsection 8 found in section 13955 there is no indication that the value of the life interest as determined under that section is not the value it should be assigned for

all purposes of inheritance taxation. To hold otherwise would create a conflict with section 13952 of the Revenue and Taxation Code, which requires that the entire property be valued as of the date of the decedent's death. ■ That objective may be achieved by the consistent application of section 13953 to determine the value of both the life interest and the remainder interests, if the tax is determined before the life tenant dies, or by the consistent application of section 13955 to determine the value of the life interest and the remainder interests, if the life tenant dies before the tax has been determined. If the present value of the entire property is divided between the respective interests by the use of mortality tables, the entire property will be valued as of the date of the decedent's death. Similarly, if the present value of the entire property is divided between the respective interests in accord with the actual duration of the life interest under section 13955 the entire property will still be valued as of the date of the decedent's death. ■ On the other hand, if section 13955 is applied only for the purpose of computing the tax on the transfer of the life interest and section 13953 is applied to determine the value of the life interest for the purpose of evaluating the remainder, section 13952 will be violated. In such case the entire property by which the respective interests are supported will not be valued as of the date of the decedent's death, but part of the entire property will escape valuation altogether.[5] ■ Accordingly, section 13955 must be used for all purposes or for none. It provides an alternative method of evaluating the life interest, when the life tenant dies before the determination of the tax. In that contingency the valuation of the life interest is removed from the operation of section 13953, and the value of the remainder must be determined according to the general rule by subtracting the present value of the life interest as determined under section 13955 from the present value of the entire property as of the date of the decedent's death.

■ Since in this case the rate with respect to Louise's interest is higher than that with respect to the grandchildren's

---

[5] In the present case William's interest as determined under section 13953 had a present value of $463,161.35 based on his life expectancy of 13.18 years. As determined under section 13955 William's interest had a present value of only $99,726.03. If the value as determined under section 13953 rather than under 13955 is used to determine the value of the remainder interests, approximately $363,000 of the present value of decedent's estate as of the date of his death would escape valuation completely.

interest, the trial court under the provisions of section 13411 of the Revenue and Taxation Code[6] correctly fixed the tax on the transfer of her interest.

The order is affirmed.

Gibson, C. J., Edmonds, J., and Carter, J., concurred.

SPENCE, J.—I dissent.

The majority opinion sustains the order of the probate court under which the value of the interest of Louise, the succeeding life tenant, which was originally computed in the first report of the inheritance tax appraiser as of the date of the testator's death, was recomputed in the second report after the death of William, the first life tenant, at its then assumed value so as to impose a greater tax on Louise's interest than that authorized by the value of her interest at the date of the death of the testator. I am of the view that there is no statutory authority for such procedure, and that the order of the probate court should be reversed.

The result reached in the majority opinion is there justified on the ground that it accomplishes "reasonable symmetry" in the valuation of the several interests. However, the question here is not whether the Legislature could have provided for such revaluation of Louise's interest upon the death of the first life tenant, but whether the Legislature has so provided. In my opinion, it has not so provided but, on the other hand, has provided directly to the contrary.

It must be remembered that an inheritance tax is not a tax upon property as such, as implied in the majority opinion, but upon the privilege of succeeding to property (24 Cal.Jur. § 395, p. 425; *Estate of Miller*, 184 Cal. 674, 678 [195 P. 413, 16 A.L.R. 694]; *Estate of Watkinson*, 191 Cal. 591, 597 [217 P. 1073]), and that ordinarily the value of that privilege is to be determined as of the date of the testator's death. Thus the general rule with respect to the valuation as of that date (24 Cal.Jur. § 422, p. 463; *Estate of Hite*, 159 Cal. 392, 395 [113 P. 1072]; *Riley v. Howard*, 193 Cal. 522, 528 [226 P. 393]) has been carried into the statutory provisions declaring the date for valuation (Rev. & Tax. Code, §§ 13311, 13951),

[6]"In the case of a transfer made subject to a contingency or condition upon the occurrence of which the right, interest, or estate of the transferee may, in whole or in part, be created, defeated, extended, or abridged, the tax is computed as though the contingency or condition has occurred, and at the highest rate possible." (Rev. & Tax. Code, § 13411.)

the interests which are affected (Rev. & Tax. Code, § 13952), and the method for determining the value of the particular interests here involved according to the mortality tables (Rev. & Tax. Code, § 13953).

It is thus recognized in the cited sections that whenever the law deals with the valuation of the privilege of succeeding to successive life interests, it is necessarily dealing with probabilities, and that a date must be fixed for determining the value of such successive interests based upon such probabilities. With one single exception, the general provisions all relate to valuation as of the date of the transferor's death. (Rev. & Tax. Code, §§ 13311, 13951, 13952, *supra*.) That single exception covers any life tenant who may die before the tax is fixed (Rev. & Tax. Code, § 13955), in which case the "life estate is terminated by the death" and the value of the interest of such deceased life tenant may be computed with certainty. The value of the interest of any succeeding life tenant, living at the date of the fixing of the inheritance tax, is not thereby rendered certain, and as to such life tenant, it cannot be said that "certainty has taken the place of probabilities." Any such succeeding life tenant might die shortly after the order fixing the tax had become final and the tax had been paid; and it may well be for this reason that the Legislature has made no provision for the recomputation of value for inheritance tax purposes based upon shifting probabilities which may ultimately prove to be very inaccurate in forecasting subsequent events. But whatever the reason may have been, the Legislature has not provided for any recomputation of the value of Louise's interest following the death of William.

The majority opinion relies strongly upon the forerunner of the above mentioned section 13955 (Stats 1935, p. 1279) and the following phrase is quoted with the indicated emphasis: "When an annuity or a life estate is terminated by the death of the annuitant or life tenant, and the tax upon such interest has not been fixed and determined, the value of said interest *for the purpose of taxation under this act* shall be the amount of the annuity or income actually paid or payable to the annuitant or life tenant during the period for which such annuitant or life tenant was entitled to the annuity or was in possession of the life estate." The emphasis should have been placed upon the words "the value of said interest," but with or without emphasis, it is too clear to require further discussion that neither its forerunner nor the present section

13955 was or is concerned with anything other than the valuation of the interest of a life tenant who may die before the inheritance tax may have been fixed.

While the cited statutory provisions appear to be entirely clear upon the point here involved, it may now be assumed solely for the purpose of this discussion that some uncertainty exists concerning their application to the facts before us. This assumption brings into play the well settled rule that "Since tax proceedings are *in invitum*, tax laws are strictly construed in favor of the taxpayer and against the state. . . . Strict construction in such cases is reasonable, because presumptively the Legislature has given in plain terms all the power intended to be exercised." (24 Cal.Jur. § 11, pp. 27-28; see, also, *Estate of Potter*, 188 Cal. 55, 64-65 [204 P. 826]; *Estate of Steehler*, 195 Cal. 386, 389 [233 P. 972].) I am of the view that this salutary rule should be followed rather than repudiated, and that the majority opinion constitutes a wide departure therefrom.

I would therefore reverse the order of the probate court, with directions to tax the interest of Louise Allen Knapp according to its value as of the date of the death of the testator as determined in the first report of the inheritance tax appraiser.

Shenk, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied November 19, 1951. Shenk, J., Schauer, J., and Spence, J., voted for a rehearing.