47 Cal.2d 290 (1956)
Estate of ISABELLA N. SKINKER, Deceased. NANCY SKINKER WEDDLE, as Executrix et al., Appellants,
v.
ROBERT C. KIRKWOOD, as State Controller, Respondent.
L. A. No. 24036. 
Supreme Court of California. In Bank. 
Nov. 20, 1956.
 R. M. Switzler for Appellants.
 James W. Hickey, Chief Inheritance Tax Attorney, Walter H. Miller, Chief Assistant Inheritance Tax Attorney, and Vincent J. McMahon, Assistant Inheritance Tax Attorney, for Respondent.
 McCOMB, J.
 This is an appeal by Nancy Skinker Weddle, executrix of the last will and testament of Isabella N. Skinker, and R. M. Switzler, attorney for said executrix, from an order overruling objections to the report of the inheritance tax appraiser and fixing an inheritance tax due by reason of the death of Isabella N. Skinker.
 Chronology
 i. Isabella N. Skinker died July 19, 1955.
 ii. Decedent's will was probated August 5, 1955, and Nancy Skinker Weddle appointed as executrix.
 iii. At the time of decedent's death section 901 of the Probate Code read in part as follows:
 "The executor, when no compensation is provided by the will or he renounces all claim thereto, or the administrator, shall receive commissions upon the amount of estate accounted for by him, as follows: For the first thousand dollars, at the rate of seven per cent; for the next nine thousand dollars at the rate of four per cent; for the next ten thousand dollars, at the rate of three per cent; for the next thirty *293 thousand dollars, at the rate of two per cent; and for all above fifty thousand dollars, at the rate of one per cent. ..." [fn. 1]
 iv. By an amendment to section 901 of the Probate Code effective September 7, 1955, the fee schedule was increased as follows:
 Tabular Material Omitted [fn. 2]
 v. The inheritance tax appraiser filed his inheritance tax report and allowed as deductions executor's and attorney's commissions based on the "old rates" which were in effect on the date of decedent's death.
 vi. Pursuant to section 14509 of the Revenue and Taxation Code, objections were filed to the report by the executrix and her attorney, appellants.
 Appellants contended that the deduction allowable for inheritance tax purposes should be computed on the new and higher rates as set forth in section 901 of the Probate Code effective September 7, 1955.
 The objections were overruled, and an order was made approving the inheritance tax report as filed and fixing the inheritance tax on the basis of the "old rates."
 The estate is not in condition for closing.
 Question
 [1a] In fixing the inheritance tax due by reason of the death of decedent, should there be permitted as a deduction the statutory commissions allowed the executrix and her attorney as set forth in section 901 of the Probate Code in effect at the time of decedent's death on July 19, 1955, or the increased fees as allowed by section 901 of the same code as amended and effective September 7, 1955?
 We are of the opinion that the commissions of the executrix and her attorney, allowed as deductions for inheritance tax *294 purposes, should be the amount of the statutory commissions in effect at the time of decedent's death, to wit, July 19, 1955, and not the increased fees as allowed by section 901 of the Probate Code as amended and effective September 7, 1955.
 The question here posed is clearly determined by the provisions of section 13988 of the Revenue and Taxation Code, which reads in part as follows:
 "The ordinary expenses of administration in the estate of any decedent are deductible from the appraised value of property included in any transfer subject to this part made by the decedent."
 "Included in 'ordinary expenses of administration' are the following:"
 "(a) The ordinary commissions allowed executors and administrators under Section 901 of the Probate Code, computed on the value of the decedent's estate as of the date of the decedent's death."
 "(b) The ordinary fees allowed attorneys for executors and administrators under Section 910 of the Probate Code, computed on the value of the decedent's estate as of the date of decedent's death."
 ....""
 If the statute specifically stated that ordinary expenses of administration included executor's and administrator's fees "under section 901 and 910 of the Probate Code in effect as of the date of death" there would be no question but that the "old rates" should be used in computing the ordinary expenses of administration.
 The code section is not that explicit. It does, however, restrict its operation to the date of death in that it allows ordinary commissions "... computed on the value of decedent's estate as of the date of decedent's death." (Italics added.) In view of such language, the reasonable assumption is the Legislature intended that in said computations those rate schedules in effect as of the date of decedent's death were to be used.
 [2] Deductions allowable for inheritance tax purposes are not necessarily those paid by the estate. [3] Under section 13989 of the Revenue and Taxation Code, the federal estate tax deduction is not necessarily the actual tax paid. It is either that amount or a smaller amount based on the approximate calculations. (Cf. Estate of Slack, 86 Cal.App. *295 2d 49 at 53 [1] [194 P.2d 61]; Estate of Guthman, 125 Cal.App.2d 408 at 411 [1 et seq.] [270 P.2d 875].)
 This is also the situation with respect to section 13988 of the Revenue and Taxation Code. The actual commission paid in the probate proceeding pursuant to section 901 of the Probate Code is based "upon the amount of estate accounted for. ..." Section 13988 of the Revenue and Taxation Code allows as a deduction said commissions "computed on the value of the decedent's estate as of the date of decedent's death."
 [4] Often the commissions allowed for inheritance tax purposes are not the amount of the commissions actually paid in the probate proceeding. The evident intent on the part of the Legislature was not to allow as deductions the actual burden sustained by an estate, but a close approximation thereof, based on standards set up in the inheritance tax law.
 [5] This is apparent from the provision in section 13988 of the Revenue and Taxation Code, which allows as a deduction only "ordinary expenses of administration." Extraordinary expenses of administration although borne by the estate are not a deduction for inheritance tax purposes.
 [1b] The reasonable interpretation of section 13988 of the Revenue and Taxation Code based upon the examination of the statutory provisions is that there should be allowed as deductions for inheritance tax purposes commissions based upon the schedule of rates provided by section 901 of the Probate Code at the time of decedent's death, that is, in the instant case, the so-called "old rates."
 Such an interpretation is in keeping with the whole tenor of the inheritance tax law, which keys everything to the date of decedent's death. Section 13311 of the Revenue and Taxation Code defines "market value" as to any transfer as the market value as of the date of decedent's death. Section 13402 assesses the tax upon that portion of the property "in excess of the exemptions allowable on the date of the transferor's death and at the rates which are then in effect." Section 13408 provides that where there are several transfers, the tax is computed as if all the property had been transferred by a single transfer at the date of death. Section 13951 makes the date of death the valuation date. Section 13983 allows as deductions debts of the decedent at the date of death. Section 13987 allows as deductions certain taxes which are a lien at the time of death. Likewise, section 14102 makes every tax due and payable at the date of decedent's death. *296
 These statutory provisions indicate a clear legislative intent to restrict the deductions for executor's and attorney's commissions to that computation in effect at the date of decedent's death, that is, in the present case, pursuant to the "old rates."
 [6] The application of the "new rates" to the deductions for inheritance taxes allowable under section 13988 of the Revenue and Taxation Code would be unconstitutional as constituting a gift of public monies, and such construction should be avoided. [7] It is established that inheritance taxes are fixed and determined in accordance with the law in effect at the date of the transfer, which in this case would be the date of death.
 [8] The Legislature cannot by a subsequent act increase or decrease the rate, remit the tax, or in any way surrender, impair or limit rights that have become fixed. (Estate of Stanford, 126 Cal. 112, 118 et seq. [54 P. 259, 58 P. 462, 45 L.R.A. 788]; Estate of Rossi, 169 Cal. 148, 149 [146 P. 430].)
 [9] Where a tax has become due, a subsequent act of the Legislature reducing the tax by reason of the change in the exemptions, tax rates, or for that matter in any way, is held to be a gift of state monies and is prohibited by article IV, section 31, of the California Constitution. [fn. 3]
 Retroactive effect of such legislation is therefore prohibited. (See Estate of Stanford, supra, where it is stated at page 121:
 "We are, therefore, of the opinion that to give retroactive effect to the law of 1897 would conflict with the provisions of the constitution prohibiting the Legislature from making any gift or donation of any public money or thing of value. * * *"
 "We quite agree with the appellant's counsel that 'an heir or legatee must take his estate on such conditions as at the time the state may have imposed'; and that subsequent legislation could not affect such vested right. And this rule, as already held, applies equally to the state, whose right to the fund in question accrued under the act of 1893.")
 The foregoing principles are applicable to the instant case.
 On July 19, 1955, the date of decedent's death, the tax *297 became due and owing in accordance with the inheritance tax law in effect at that time. Such law included section 13988 of the Revenue and Taxation Code, and the rates for executor's commissions applicable at that time were the "old rates." To read into section 13988 a change by virtue of section 901 of the Probate Code, as it became effective approximately two months thereafter, would be to read into the statute a construction which would result in the tax due at the date of death being reduced. Such a construction would constitute a gift of state monies and should be avoided.
 [10] It is an established principle of statutory construction that when two alternative interpretations are presented, one of which would be unconstitutional and the other constitutional, the court will choose that construction which will uphold the validity of the statute and will be constitutional. (County of Los Angeles v. Legg, 5 Cal.2d 349, 353 [2] [55 P.2d 206].) The proper interpretation of section 13988 requires the application in the instant case of the "old rates."
 Estate of Spires, 126 Cal.App. 174 [14 P.2d 340], and Estate of Parker, 200 Cal. 132 [251 P. 907], relied on by appellants, are not applicable to the facts of the present case. Each of the cited cases dealt with fees for extraordinary services. [11] Extraordinary commissions and fees are different from statutory commissions. Whether any extra fees or commissions should be allowed in a given case, and if so and how much, is committed to the discretion of the court. In the case of statutory commissions and fees, the determination is made by the Legislature. The court's function is limited to a ministerial computation.
 [12] It follows that statutory fees and commissions, such as are involved in this case, are in the nature of fixed charges. The interest thus created, both from the standpoint of the heirs, devisees, the personal representative and the attorney, are substantive in character and not procedural. (Cf. Estate of Potter, 188 Cal. 55, 60 [5] [204 P. 826].)
 The soundness of the above principles was recognized by this court in Estate of Parker, supra, where it is said at pages 141- 142: "The amendment in question, to the extent that it removes all limitation upon the amount which may be allowed to executors and administrators as extra compensation for extraordinary services performed by them, has the effect of imposing new and additional liabilities upon estates in probate. A statute will not be given a retroactive *298 construction by which it will impose liabilities not existing at the time of its passage. 'Laws which create new obligations, or impose new duties, or exact new penalties because of past transactions, have been universally reprobated by civil and common law writers, and it is to be presumed that no statute is intended to have such effect unless the contrary clearly appears.' "
 The order is affirmed.
 Gibson, C.J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.
 CARTER, J.
 I dissent.
 The majority opinion holds that the Legislature did not intend by the 1955 amendment to section 901 of the Probate Code (increasing the fees of administrators, which became effective after decedent's death, but was in effect to fix the executor's fees in the estate; see Estate of Johnston, ante, p. 265 [303 P.2d 1]) to make such amendment applicable in computing the inheritance tax on estates of persons who died before its effective date; that such an application of the amendment would be a gift of public money in violation of the Constitution (Cal. Const., art. IV, 31) in that under the prior law only the old allowances for executor's fees could be deducted from the value of the estate in computing inheritance taxes.
 There is no gift of public money contrary to the Constitution when we consider the applicable law. This court held in Estate of Johnston, ante, pp. 265, 270, 271 [303 P.2d 1], that the 1955 amendment to section 901 of the Probate Code applied to persons who had died before its effective date but where the administrator's fees had not yet been fixed. We there said: "We are of the opinion that the commissions of the executor and his attorney should be the amount of the statutory commissions in effect at the time of the settlement of the account and making of the order allowing compensation, to wit, in the instant case in accordance with the provisions of section 901 of the Probate Code as amended and effective September 7, 1955. ... 'On the other hand [quoting from Estate of Spires, 126 Cal.App. 174, 177 (14 P.2d 340)], the right of the executor to a defined rate or standard of compensation is not vested as of the date of the decedent's death, nor even as of the date when he qualified as executor, but such right first accrues at the time when by appropriate *299 order the amount of compensation payable to him is determined and allowed. And since the right of an executor to compensation for extraordinary services is not established or vested until allowed by the court in the exercise of its discretion, it follows as a direct consequence that the law in force at the time when the order is made constitutes the only law by which the power of the court is to be governed.' (Italics added.)"
 "The weight of authority in the United States is to the effect that the law in force at the time of the settlement of the account, and not at the date of death, governs the amount of compensation allowed executors, administrators and their attorneys." In addition the same has been said: "The matter of allowance of compensation to the personal representative ... is generally made in and by the settlement of the final account. But the representative is not entitled to compensation until an allowance therefor has been made by the court, even where compensation is provided for by the will." (21 Cal.Jur.2d, Executors and Administrators, 892.) And further with reference to time of valuation for computing fees: "Though the inventory value is prima facie evidence of the value of the property, it is not conclusive. That is, if the value as shown by the inventory is not satisfactory to all parties concerned, it should be left open to inquiry. In such event, a reappraisement and evidence of market value may be given effect. It follows that where property is distributed in kind, or where the representative is charged with the appraised value of property taken from the estate under mortgage foreclosure and applied to payment of the debt against the estate, the valuation in the inventory, in the absence of objection or circumstances tending to induce suspicion that the appraised value is not fair and reasonable, is the basis of estimating the representative's commissions." (21 Cal.Jur.2d, Executors and Administrators, 888.) Therefore, under section 901 the administrator's fees were properly computed on the basis of the law in effect at the time the order therefor was made rather than at the date of death. That was the law when the inheritance tax laws were adopted and still is. That law provided that the rates or amount of fees was determined as of such date rather than at the date of death. We must look therefore at the inheritance tax law. It provides that the "ordinary expenses of administration in the estate ... are deductible from the appraised value of property"; included in such expenses are "The ordinary *300 commissions allowed executors ... under Section 901 of the Probate Code, computed on the value of the ... estate as of the date of ... death." (Emphasis added.) (Rev. & Tax. Code, 13988.) That is to say, the fees deductible for the computation of the tax are those allowed by section 901. Along with section 901 goes its construction when it is amended as to the applicability of the amendment to estates of persons already dead as above pointed out. In other words the inheritance tax law incorporates section 901 as creating a deductible item in computing the tax and that section when amended after a death still applies as seen from the foregoing authorities. The inheritance tax law (Rev. & Tax. Code, supra, 13988) must be read as providing that administrator's fees may be deducted to the extent authorized by section 901 as properly construed and applied including the effect of amendments. So reading, the effect of section 901 on the inheritance tax law, it must follow that the law now is and always has been that the deductible fees are those applicable under section 901 at the time the fees are claimed and allowed. Hence there can be no gift of public money because the law (inheritance tax law) has always authorized a deduction based on the rate effective when the order for fees is made. As is said in Estate of Slack, 86 Cal.App.2d 49, 54 [194 P.2d 61]: "[It is] the intent of the Legislature that the deductions [from the value of the estate in inheritance tax computations] to be allowed are only those which have been paid or in which the liability has been attached so that they are actually due."
 The majority opinion holds that because the fee deduction for inheritance tax purposes ( 901) must be on the value of the estate at the time of death, the rates must be those effective at that time. That does not follow because the fees are not computed on the value of the estate at death. They are computed upon the amount of the estate accounted for. The key words are "on" and "value." It has nothing to do with the amount of the deduction allowed, that is, from the standpoint of rates to be applied. It has only to do with the base to which the rates-percentages are to be applied. It is to be computed "on" the value at death which means nothing more than a mathematical computation using the value at that time. It says nothing about the rates to be applied in determining the fees, that is, those existing after death when the estate is accounted for and the fees are based upon the amount so accounted for.
 It necessarily follows that the ascertainment of the amount *301 of the taxes cannot be determined until the expenses of administration are known sometime during the estate proceedings even though the taxes are due on death under the inheritance tax law. [fn. *] The determination of that amount depends on the deductions allowed and that in turn depends on the law in effect when the deductions are allowed. Allen v. Franchise Tax Board, 39 Cal.2d 109 [245 P.2d 297], is analogous. There it was held that an amendment to the income tax law which authorized the apportionment of a lump sum income over the years in which it was earned instead of allocating it all to one year, was applicable to income thus earned in prior years; that there was no gift of public money. It is there said (at p. 114): "It cannot be denied that the result is to reach all of the income received by the affected taxpayers and, as in the case of other taxpayers, at the rates applicable in the years in which it was earned. No income is freed from tax liability. Taxpayers in the situation of the plaintiff are in effect merely given the same opportunity as all other taxpayers to return their income for taxation in the year in which it was earned. The Legislature has said that the tax produced at the rate so applicable is all that the state is entitled to and that the taxpayers affected by the change should be treated as are taxpayers who return compensation in the year in which it was earned. ..."
 "There can be no constitutional objection to the result which affects only the tax base as distinguished from a tax rate change where, as in this case, the provision was enacted prior to the time the tax should become due and payable. The provision was enacted and became effective prior to the time when the state's right to receive or collect the tax accrued. There is therefore no relinquishment of a vested state right." Similarly in the instant case only the tax base, not the rate, is changed by the 1955 amendment of section 901. The amount of the tax is not known and it is not collectible until the expenses of administration are known including the authorized deductions such as administrator's fees.
 The inheritance tax law must be examined realistically. Its basic theory is " '... that the inheritance tax is imposed upon the net clear value of what the transferee receives, and that to ascertain this the value of what he does not receive, in contemplation of law, must be deducted from the value *302 of what the decedent left.' " (Estate of Knapp, 37 Cal.2d 827, 831 [236 P.2d 372].) And: "While the tax imposed by the act is not a tax on property as such, but a tax upon one for the privilege of succeeding to property, the amount of the tax as to any beneficiary is to be determined according to the value of the 'net succession,'__________that is, the value of such property as remains for him after the satisfaction of such charges and burdens as may lawfully be satisfied in due course of administration. It is only such property that can be properly said to actually pass to the beneficiary." (Emphasis added; Estate of Hite, 159 Cal. 392, 394 [113 P. 1072, Ann.Cas. 1912C 1014, 32 L.R.A.N.S. 1165]; see also Estate of Miller, 184 Cal. 674 [195 P. 413, 16 A.L.R. 694].) This fundamental basis will be thwarted if, as held by the majority, the estate must pay the increased executor's fees (Estate of Johnston, supra, ante, p. 265) but the beneficiary must pay taxes on that which he does not receive. Indeed, there is no recipient of the claimed gift of public money as the beneficiary does not get the extra compensation because it is paid to the executor who, under the law as properly interpreted, is entitled to it (Estate of Johnston, supra); it is not a gift to him.
 Such cases as Estate of Martin, 153 Cal. 225 [94 P. 1053], Estate of Stanford, 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788], Trippet v. State, 149 Cal. 521 [86 P. 1084, 8 L.R.A.N.S. 1210], and Estate of Potter, 188 Cal. 55 [204 P. 826], are not controlling for they involved an attempt to relieve an estate from a tax after death. Here, as seen, the only question is the method of arriving at the tax or the basis for the computation of the tax. Since this court has held that the fees allowable to executors, administrators and their attorneys must be determined according to the law in effect at the date of the allowance of such fees, and the inheritance tax law makes such fees deductible items in computing the tax, it must follow that any such fees so allowed are deductible items in computing inheritance taxes. The application of this rule may have the effect of increasing the amount of the inheritance tax as well as reducing it. For example, an estate consisting largely of securities which enjoyed a high price listing at time of death, but suffered severe deflation in price due to economic depression during the administration of the estate, so that the amount accounted for is far less than the value at the time of death, the fees allowable might be considerably less even though the rate may have been increased *303 since the date of death. In such a case the value for inheritance tax purposes would be the higher value at the date of death while the fees would be computed on the lesser amount accounted for. In other words, the basis for computing the fees is not the same as the one used for computing the tax, hence the applicable law need not be the same.
 I would therefore reverse the order.
NOTES
[fn. 1] 1. Hereinafter the rates in effect pursuant to section 901 of the Probate Code at the time of decedent's death on July 19, 1955, will be referred to as the "old rates."
[fn. 2] 2. The rates in effect pursuant to section 901 of the Probate Code effective on and after September 7, 1955, will be referred to as the "new rates."
[fn. 3] 3. Article IV, section 31, of the California Constitution, in imposing restrictions upon the Legislature, declares: "... nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; provided, that nothing in this section shall prevent the Legislature granting aid pursuant to Section 22 of this article."
[fn. *] *. They are not delinquent until two years after they become due and payable. (Rev. & Tax. Code, 14103.)